# FISHER BROADCASTING, INC.

*v.*

# DEPARTMENT OF REVENUE

## (TC 3290)

Roy D. Lambert, Schwabe, Williamson & Wyatt, Portland, James William Johnson and Timothy L. Austin, Graham & Dunn, Seattle, Washington, represented plaintiff.

Marilyn J. Harbur, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered February 7, 1994.

## CARL N. BYERS, Judge.

Plaintiff appeals defendant's assessments of additional excise tax and Multnomah County business income tax for 1983 and 1984. The assessments were based on defendant's finding that plaintiff was a unitary business and required to report its income on an apportionment basis. Plaintiff claims it is a public utility entitled to use a segregated method of reporting.

### FACTS

Plaintiff is a Washington corporation with headquarters in Seattle. Plaintiff began operation in 1926 as Fisher's Blend Station, Inc., organized to operate KOMO radio station in Seattle. In 1953, plaintiff added KOMO television station. In 1958, a separate Oregon corporation was organized as Fisher Broadcasting Company. In 1961, Fisher Broadcasting acquired the license to operate KATU, a television broadcasting station in Portland. In 1966, the two corporations merged and Fisher's Blend Station, Inc., was the surviving corporation. The merger was to facilitate the refinancing of KATU. In 1978, plaintiff's name was changed to Fisher Broadcasting Company.

The merger of the two corporations included some unusual conditions. The board of directors was divided into two executive committees, one for Washington and one for Oregon. As a consequence, the board of directors meets only once each year. The preferred shareholders of the Oregon operation retained the right to elect four directors who must be residents of Oregon. Those four directors, plus two generally elected directors, constitute the executive committee for KATU. Also, the merger agreement provided for separate accounting.

"Insofar as possible for accounting purposes, the books and records of such Division shall be maintained as if said Portland Division had continued operations after January 1, 1967, as a separate subsidiary corporation of this corporation with all allocations of income, expenses and taxes to be made accordingly in accordance with good accounting practices."

### TAX HISTORY

In 1974, plaintiff appealed defendant's assessments of excise taxes for the years 1969 through 1971. In the

resulting Opinion and Order, No. I-74-14, defendant noted that the parties agreed plaintiff was a unitary operation. The issue in that appeal was whether the segregated or apportionment method of reporting should be used. The director found plaintiff was a "public utility" within the meaning of ORS 314.610[1] and, therefore, ORS 314.280 governed. Under ORS 314.280, the director found that plaintiff was entitled to use segregated reporting. However, the opinion and order expressly states:

> "It is understood, however, that in doing so and particularly in view of the fact that the taxpayer's business admittedly involves a unitary operation which normally would lend itself more readily to the apportionment method of reporting, my decision is not intended as a determination with respect to the proper method of reporting for subsequent years."

## RES JUDICATA

■    Despite the disclaimer, plaintiff claims the doctrine of *res judicata* bars defendant from treating plaintiff as other than a public utility. However, plaintiff ignores the fact that excise taxes are imposed on an annual basis. Each tax year constitutes a separate claim. *See generally Mittleman v. Commission*, 2 OTR 105 (1965); *PP&L v. Dept. of Rev.*, 10 OTR 417 (1987). A determination of plaintiff's status in one year is not binding as to plaintiff's status in another year. This is particularly true when circumstances change from time to time. Plaintiff's status is not a static or unchanging fact. While the authorities are mixed, as a general rule, *res judicata* is not applied in tax cases. *See* Harvie Branscomb, Jr., *Collateral Estoppel in Tax Cases: Static and Separable Facts*, 37 Tex L Rev 584 (1959). *See also* 2 Kenneth Culp Davis, *Administrative Law Treatise* § 13.3 (3d ed 1994); 4 Kenneth Culp Davis, *Administrative Law Treatise* § 21.8 (2d ed 1983). Another factor against applying *res judicata* in this circumstance is the time which has elapsed since the initial determination. *See* Restatement (Second) Judgments 2d § 27, illus 9 (1982).

---

[1] All references to Oregon Revised Statutes are to the 1983 Replacement Part.

■　　　Plaintiff cites *Lincoln County v. Dept. of Rev. (TC 2676)*, 11 OTR 17 (1988), in support of its position. There the court held plaintiff was barred by *res judicata* from challenging the defendant's administrative findings for a subsequent year on the same issue where there had been no change in the law or facts. Upon subsequent review, the court finds that holding is inconsistent with the statutory direction that matters in this court be heard *de novo*. ORS 305.425(1). Accordingly, that case is overruled.

## PUBLIC UTILITY

■　　　Plaintiff contends it is a public utility within the meaning of ORS 314.610(6), which provides:

> " 'Public utility' means any business entity whose principal business is ownership and operation for public use of any plant, equipment, property, franchise, or license for the transmission of communications, transportation of goods or persons, or the production, storage, transmission, sale, delivery, or furnishing of electricity, water, steam, oil, oil products or gas."

This definition is very broad. It could include such businesses as a car rental company, a heating oil company, a car battery recycler, a bottled water company and perhaps a Turkish steam bath.

Defendant contends the term "public utility" implies a rate-regulated business as is expressly required by the definition of "public utility" in the Multistate Tax Compact, ORS 305.655. However, the Multistate Tax Compact does not apply because plaintiff did not elect to come within its provisions.[2] Also, defendant's position would require the court to add words to the statute, something it is forbidden to do. *See* ORS 174.010.

It is puzzling why the legislature chose such a broad definition. It may have assumed the label "public utility" only applies to regulated companies but the wording of the statute belies such an assumption. Defendant argues that television and radio are specifically mentioned in OAR 150-314.670-(A). However that rule lists both rate-regulated

---

[2] Article III of the compact provides a taxpayer may elect to have a portion of his income treated under the compact or under the laws of the state without reference to the compact. In the absence of an election, the compact does not apply.

and nonregulated businesses. The court finds plaintiff is a public utility within the meaning of ORS 314.610(6) and, therefore, comes within the provisions of ORS 314.280 with regard to the determination of its method of reporting income.

## STATUTORY CONSTRUCTION

■     The fundamental point of disagreement is the proper construction of ORS 314.280. That statute provides:

> "(1)   If a taxpayer has income from business activity as a financial organization or as a public utility (as defined respectively in ORS 314.610(4) and (6)) which is taxable both within and without this state (as defined in ORS 314.610 (8) and 314.615), the determination of net income shall be based upon the business activity within the state, and the department shall have power to permit or require either the segregated method of reporting or the apportionment method of reporting, under rules and regulations adopted by the department, so as fairly and accurately to reflect the net income of the business done within the state.
>
> "(2)   The provisions of subsection (1) of this section dealing with the apportionment of income earned from sources both within and without the State of Oregon are designed to allocate to the State of Oregon on a fair and equitable basis a proportion of such income earned from sources both within and without the state. Any taxpayer may submit an alternative basis of apportionment with respect to his own income and explain that basis in full in his return. If approved by the department that method will be accepted as the basis of allocation."

Plaintiff contends this statute provides the taxpayer a choice of using either segregated or apportionment reporting. Plaintiff argues that neither method is preferred, but the test is which method "most fairly and accurately reflects the net income of business done within the state." Plaintiff acknowledges ORS 314.650 and 314.670 create a "rebuttable presumption" that the three-factor formula should apply, but contends ORS 314.280 is an exception to that rule.

Plaintiff misreads the statute. The statute empowers the defendant, not the taxpayer to choose a method of reporting. Significantly, the statute authorizes defendant to exercise that power by rules and regulations.

Defendant has chosen to require the apportionment method. Despite the legislature's express exclusion of public utilities from the operation of the Uniform Division of Income for Tax Purposes Act (UDITPA), the effect of defendant's adoption of the rules makes the UDITPA rules applicable to ORS 314.280.[3] Defendant's intent in adopting the UDITPA regulations by reference is made clear in OAR 150-314.280-(E) which indicates:

> "For public utilities, other than carriers of freight or passengers and companies engaged in sea transportation services, the three factors ordinarily will be property, payroll and sales."

This is not to say that plaintiff is foreclosed from trying to avoid the three-factor formula apportionment.

> "ORS 314.670 provides that if the allocation and apportionment provisions of ORS 314.610 to 314.665 do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for, or the Department may require * * *
>
> "(1)   Separate accounting;
>
> "(2)   The exclusion of any one or more of the factors;
>
> "(3)   The inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this state; * * *."OAR 150-314.670-(A).

Moreover, defendant's own regulation indicates there may be a need to use another method for particular industries.

> "In the case of certain industries such as air, rail, or sea transportation, trucking, television, radio, motion pictures, various types of professional athletics, and so forth, the foregoing rules in respect to the apportionment formula do not set forth appropriate procedures for determining the apportionment factors." OAR 150-314.670-(A).

Plaintiff believes that this "regulatory provision should tip the balance in favor of segregated reporting," at

---

[3] Defendant's adoption of the rules and application of statutes is extensive. Specifically, OAR 150-314.280-(C) adopts 150-314.615-(A), 150-314.615-(B), 150-314.620-(A) to 150-314.620-(C), 150-314.640 and 150-314.670-(A) by reference. Additionally, OAR 150-314.280-(D) adopts ORS 314.625 to 314.645. OAR 150-314.280-(I) adopts OAR 150-314.670-(A) by reference for the second time.

least in situations like plaintiff's. Despite the fact that the regulation reads like a determination of fact, it has not been construed as such. The Oregon Supreme Court in *Twentieth Century-Fox Film v. Dept. of Rev.*, 299 Or 220, 700 P2d 1035 (1985), examined this specific rule and said, "We do not read the rule to create a *per se* exemption for these industries." 299 Or at 230, 700 P2d at 1040.

■ Under its regulatory scheme, defendant has determined that public utilities under ORS 314.280 must show the apportionment formula is not appropriate before they can use segregated reporting. This is consistent with the general tenor of legislative history and court decisions. As noted in *Donald M. Drake Co. v. Dept. of Rev.*, 263 Or 26, 500 P2d 1041 (1972), apportionment under the Uniform Act is the "prescribed" method.

Thus, plaintiff was left with two alternatives. Under ORS 314.280(2):

> "Any taxpayer may submit an alternative basis of apportionment with respect to his own income and explain that basis in full in his return. If approved by the department that method will be accepted as the basis of allocation."

Although defendant's regulations have not repealed this statute, neither did plaintiff select this approach. Plaintiff did not submit an explanation with its return and, perhaps more importantly, defendant did not approve any alternative method.

Plaintiff's second alternative was to establish the appropriateness of a different method or modification under OAR 150-314.670-(A). In *Twentieth Century-Fox Film v. Dept. of Rev.*, 299 Or 220, 700 P2d 1035 (1985), the Oregon Supreme Court described the necessary showing as a two-part test. First, the taxpayer must show that the formula as a whole does not fairly represent the extent of business engaged in within the state. Secondly, the taxpayer must prove that the alternative is reasonable. Reasonableness is determined by whether:

> A. It fairly represents the extent of the business activity in the state and would not result in more or less than 100 percent of the income being taxed.

B.   The method would not create or foster a lack of uniformity among UDITPA jurisdictions, and

C.   It reflects the economic reality of the business engaged in by the taxpayer in Oregon.

The undisputed facts demonstrate that plaintiff is a unitary business. Accordingly, the test set forth in *Twentieth Century-Fox Film* applies to plaintiff. Plaintiff has not passed the test. Rather, it focused its proof on which method more fairly and accurately reflects its net income. The scope of the test is not just net income, but also the extent of business done in the state.

"It is also important to note that it must be established that statutory apportionment does not adequately reflect business activity, not merely that it does not adequately reflect income earned in the state." *Twentieth Century-Fox Film*, 299 Or at 233, 700 P2d at 1042-43.

Plaintiff's evidence does not establish that the statutory apportionment formula fails to reflect its business activity in Oregon. This apparently was by design. Plaintiff states in its reply brief:

"Frankly, the Taxpayer did not seek to utilize an alternative method of apportionment as contemplated by OAR 150-314.670-(A) because it was seeking to use one of the two statutorily prescribed methods of reporting, * * *."

Plaintiff argues that the apportionment formula "unfairly allocates KOMO's larger market profit to Oregon * * *." Again, however, this does not address the extent of plaintiff's business activity in Oregon and whether the apportionment formula fairly reflects that business.

## COUNTY BUSINESS TAX

It is undisputed that since the Multnomah County Business Income Tax (MCBIT) was adopted in 1976 plaintiff filed its returns based on the number of households served in Multnomah County. Plaintiff receives advertising revenues from advertisers both within and without the county. To allocate its income, plaintiff used population inside and outside the county to apportion its sales. Upon audit, defendant attributes all KATU sales to Multnomah County.

For the years in question, MCBIT followed essentially the same rules that applied to plaintiff for state excise tax purposes. MCBIT adopted ORS 314.665(3) but made provision for the application of ORS 314.280 for public utilities. Thus, plaintiff's position is governed by the same analysis that is applicable to its excise taxes. Plaintiff argues that MCBIT has always been calculated its way, and that everybody else does it that way. However, in the absence of alleged constitutional violations and evidence supporting those claims, the court can only apply the law as it is written. The statute in effect in 1983 and 1984 did not permit the allocation of income based on households served.

Based on the evidence adduced, the court finds department's Opinion and Order No. 90-0643 must be sustained. Defendant to recover costs and disbursements.