Argued and submitted October 31, 1994, judgment of the Tax Court reversed and case remanded to the Department of Revenue for further proceedings July 20, 1995

FISHER BROADCASTING, INC.,
*Appellant,*

*v.*

DEPARTMENT OF REVENUE,
STATE OF OREGON,
*Respondent.*

(OTC 3290; SC S41134)

898 P2d 1333

John R. Faust, Jr., of Schwabe, Williamson & Wyatt, Portland, argued the cause for appellant. With him on the briefs were Roy D. Lambert, Portland, and Timothy L. Austin and James Wm. Johnston, of Graham & Dunn, Seattle, Washington.

Marilyn J. Harbur, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief was Theodore R. Kulongoski, Attorney General, Salem.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Plaintiff Fisher Broadcasting, Inc., (taxpayer) brought this action in the Tax Court to obtain refunds of its Oregon corporate excise tax and Multnomah County business tax for the years 1983 and 1984. The Tax Court entered a judgment sustaining the opinion and order of defendant Department of Revenue (department), which denied the refunds. *Fisher Broadcasting, Inc. v. Dept. of Rev.*, 13 OTR 32 (1994). We review *de novo* on the record. ORS 305.445; ORS 19.125(3). For the reasons that follow, we reverse.

### FACTS AND PROCEDURAL BACKGROUND

Taxpayer owns and operates KATU television in Portland, Oregon, and KOMO television and radio in Seattle, Washington. We take the following undisputed facts from the Tax Court's opinion:

"[Taxpayer] is a Washington corporation with headquarters in Seattle. [Taxpayer] began operation in 1926 as Fisher's Blend Station, Inc., organized to operate KOMO radio station in Seattle. In 1953, [taxpayer] added KOMO television station. In 1958, a separate Oregon corporation was organized as Fisher Broadcasting Company. In 1961, Fisher Broadcasting acquired the license to operate KATU, a television broadcasting station in Portland. In 1966, the two corporations merged and Fisher's Blend Station, Inc., was the surviving corporation. The merger was to facilitate the refinancing of KATU. In 1978, [taxpayer's] name was changed to Fisher Broadcasting Company.

"The merger of the two corporations included some unusual conditions. The board of directors was divided into two executive committees, one for Washington and one for Oregon. As a consequence, the board of directors meets only once each year. The preferred shareholders of the Oregon operation retained the right to elect four directors who must be residents of Oregon. Those four directors, plus two generally elected directors, constitute the executive committee for KATU. Also, the merger agreement provided for separate accounting:

" 'Insofar as possible for accounting purposes, the books and records of such Division shall be maintained as if said Portland Division had continued operations after January 1, 1967, as a separate subsidiary corporation of this corporation with all allocations of income, expenses and

taxes to be made accordingly in accordance with good accounting practices.' " 13 OTR at 33.

In 1974, taxpayer appealed the department's assessments of excise taxes for the years 1969 through 1971. The sole issue in that appeal was whether the segregated or apportionment method of accounting was proper in measuring the business operations of the taxpayer within the State of Oregon.[1] In the resulting Opinion and Order, No. I-74-14, the director concluded that taxpayer was a "public utility" within the meaning of ORS 314.610(6)[2] and, therefore, that ORS 314.280[3] governed. The director further held that, under ORS 314.280, taxpayer was entitled to use the segregated method of reporting. Taxpayer continued to use the segregated method in the years following 1974.

---

[1] In *Twentieth Century-Fox Film v. Dept. of Rev.*, 299 Or 220, 224, 700 P2d 1035 (1985), this court described the apportionment method:

"Dollar values are assessed to each of three aspects of taxpayer's business: property, sales and payroll. Each of these factors is a fraction. The numerator of each fraction is the Oregon portion of the value and the denominator is the total value everywhere. Each fraction is rendered a percentage. The three percentages are added together and divided by three. The resultant percentage represents the extent of taxpayer's business in Oregon. It is multiplied by taxpayer's income during the tax year to determine the Oregon taxable income. The resultant dollar figure * * * is multiplied by the applicable excise tax rate to determine the amount taxpayer must pay."

[2] Unless the context otherwise requires, as used in ORS 314.605 to 314.675, "public utility" includes any business entity whose principal business is ownership and operation for public use of any "property, franchise, or license for the transmission of communications." ORS 314.610(6).

[3] ORS 314.615 provides:

"Any taxpayer having income from business activity which is taxable both within and without this state, other than activity as a financial organization or public utility or the rendering of purely personal services by an individual, shall allocate and apportion the net income of the taxpayer as provided in ORS 314.605 to 316.675. *Taxpayers engaged in activities as a financial organization or public utility shall report their income as provided in ORS 314.280 and 314.675.*" (Emphasis added.)

ORS 314.280(1) provides:

"If a taxpayer has income from business activity as a financial organization or as a public utility (as defined respectively in ORS 314.610(4) and (6)) which is taxable both within and without this state (as defined in ORS 314.610(8) and 304.615), the determination of net income shall be based upon the business activity within the state, and *the department shall have power to permit or require either the segregated method of reporting or the apportionment method of reporting, under rules and regulations adopted by the department, so as fairly and accurately to reflect the net income of the business done within the state.*" (Emphasis added.)

In 1989, the department issued Notices of Assessment concerning adjustments made by the department to taxpayer's corporate excise tax and Multnomah County business income tax returns for 1983 and 1984. Those adjustments were based on the apportionment method of reporting. Taxpayer challenged those assessments, arguing that it was permitted to continue using the segregated method. The department disagreed and rejected taxpayer's challenge. Taxpayer appealed.

In the Tax Court, taxpayer first argued that the department is barred by the doctrine of *res judicata* from relitigating the appropriate method of reporting. Taxpayer further argued that, even if the department were not barred from relitigating that question, taxpayer nevertheless should be permitted to use the segregated method for 1983 and 1984, because the apportionment method did not "fairly and accurately" reflect its net income for business done within Oregon. ORS 314.280(1).

In rejecting taxpayer's *res judicata* argument, the Tax Court stated that, generally, *res judicata* is not applicable in tax cases. *Fisher Broadcasting*, 13 OTR at 34-35.[4] The court also stated that the application of *res judicata* is inconsistent with the statutory direction in ORS 305.425(1) that Tax Court matters be heard *de novo*. The court concluded that the relevant statutes and administrative rules supported the department's decision to require taxpayer to use the apportionment method and that taxpayer had failed to show that the apportionment method fails to "fairly" reflect its "business activity" in Oregon. Taxpayer appeals the Tax Court's judgment.[5]

---

[4] In its opinion, the Tax Court used the term *res judicata*. *Fisher Broadcasting*, 13 OTR 32, 34-35 (1994). This court has noted that the term *res judicata* sometimes is used loosely to encompass both concepts of claim preclusion and issue preclusion. In *Drews v. EBI Companies*, 310 Or 134, 139, 795 P2d 531 (1990), this court stated: "[W]e will use the more exact terms 'claim preclusion' [*res judicata*] or 'issue preclusion' [collateral estoppel] to denote the respective branches of preclusion by former adjudication. This is merely a choice of nomenclature, not a law change."

[5] In the Tax Court, the department also argued that taxpayer does not qualify as a "public utility" within the meaning of ORS 305.655 (Multistate Tax Compact) and ORS 314.610(6). On appeal, the department does not challenge the Tax Court's conclusion that taxpayer is a public utility within the meaning of ORS 314.610(6) and, therefore, comes within the provisions of ORS 314.280 with regard to a determination of its method of reporting income. *Fisher Broadcasting*, 13 OTR at 35-36.

## ISSUE PRECLUSION

Taxpayer first contends that the Tax Court erred in ruling that taxpayer was not entitled to the benefit of the doctrine of issue preclusion. We turn to that question.

ORS 305.425(1) provides:

"All proceedings before the [Tax] court shall be original, independent proceedings and shall be tried without a jury and de novo."

Neither the Tax Court's opinion nor the department's brief offers persuasive support for the department's assertion that issue preclusion is inherently irreconcilable with *de novo* review in tax cases. Nor does logic support that proposition.

In the only case in which this court has touched on the question in the context of a review of a decision by the Tax Court, this court indicated that

"[t]here is no reason in principle why an earlier determination should not be given this effect in successive tax litigation as in any other litigation, as long as the fact determined in the prior case was necessary to the earlier judgment and its possible significance for later tax controversies was not unforeseeable." *Lethin v. Dept. of Revenue*, 278 Or 201, 205, 563 P2d 687 (1977) (footnote omitted).

*Lethin,* however, involved the possible preclusive effect of an earlier Tax Court decision on a later Tax Court decision, rather than the possible preclusive effect of an earlier administrative decision on a later Tax Court decision. In declining to give preclusive effect to the earlier Tax Court determination of value in *Lethin,* this court stated:

"If we held that such an affirmance irrebuttably fixes the historic value of property for subsequent tax years, we would be giving the effect of collateral estoppel, not to a finding of the Tax Court, but to the administrative appraisal of the property by the county assessor. Administrative determinations are sometimes given such effect, depending on the formality of the administrative procedure and other factors, but * * * we do not believe, that Oregon tax procedures call for this effect of a county assessor's appraisal in one year upon an assessment in a different year." *Id.* at 206 (footnote omitted).

The analysis in *Lethin* supports a conclusion that the decision whether an earlier administrative determination in a tax case should be given preclusive effect in a later tax case should depend on "the formality of the administrative procedure and other factors." *Id.* This court has elaborated, in other contexts, on such "other factors" relevant to a determination whether issue preclusion should be applied in a given case.

■■ In *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 103, 862 P2d 1293 (1993), this court stated that issue preclusion arises in a subsequent proceeding when an issue of ultimate fact has been determined by a valid and final determination in a prior proceeding. Issue preclusion can be based on the constitution, common law, or a statute. If one tribunal has decided an issue, the decision on that issue may preclude relitigation of the issue in another proceeding if five requirements are met, the first of which is that "[t]he issue in the two proceedings is identical." *Id.* at 104.[6]

■ As was true in *Nelson*, the outcome in this case turns on the first question, *viz.*, whether the issue in the two proceedings is identical. We conclude that the issue in the two proceedings is not identical, because the underlying facts relevant to the determination of taxpayer's status in those different years are not the same. For example, the manner in which management, marketing, and Washington, D.C., news

---

[6] The other *Nelson* requirements are:

"2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding. * * *.

"3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue. * * *.

"4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding. * * *.

"5. The prior proceeding was the type of proceeding to which this court will give preclusive effect. * * *." *Nelson*, 318 Or at 104 (citations omitted).

This court qualified *Nelson's* fifth requirement, noting that some, but not all, administrative proceedings may be appropriate for application of issue preclusion:

"Whether an administrative decision has a preclusive effect depends on: (1) whether the administrative forum maintains procedures that are 'sufficiently formal and comprehensive'; (2) whether the proceedings are 'trustworthy'; (3) whether the application of issue preclusion would 'facilitate prompt, orderly and fair problem resolution'; and (4) whether the 'same quality of proceedings and the opportunity to litigate is present in both proceedings.' " *Id.* at 104-05 n 4.

bureau expenses were allocated between KOMO and KATU were not the same in the later years. In fact, the Washington, D.C., news bureau that served both KATU and KOMO did not even exist at the time of the earlier opinion and order. Those examples amply demonstrate that taxpayer's status in the different tax years was not identical.

Accordingly, we hold that the Tax Court did not err in ruling that taxpayer was not entitled to the benefit of the doctrine of issue preclusion in this case. We turn next to the issue of accounting methods.

## STATUTORY CONSTRUCTION

■ Before 1989, taxpayer allocated income, and paid taxes, using the segregated method of income allocation. Under the segregated method of income allocation, businesses in different states that are connected by common ownership are permitted to report, and pay separate taxes on, the individual incomes of each business entity. In 1974, the department had approved that method, with respect to taxpayer's Portland and Seattle television stations, as permissible under ORS 314.280 (set out above). In 1989, the department notified taxpayer that additional taxes were required for tax years 1983 and 1984. Those additional taxes were assessed using the "apportionment" method of income allocation, because use of that method, rather than the segregated method, had become the default method allowed by the pertinent administrative rule, OAR 150-314.280-(I).

At all times relevant to this appeal, OAR 150-314.280-(I) read, in its entirety:

"The provisions of OAR 150-314.670-(A) are by this reference incorporated herein and made a part of this OAR 150-314.280-(I)."

OAR 150-314.670-(A), a rule promulgated by authority of the Uniform Division of Income for Tax Purposes Act of 1965 (UDITPA), provided in part at the time:

"ORS 314.670 provides that if the allocation and apportionment provisions of ORS 314.610 to 314.665 do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for, or the Department may require, in respect to all or any part of the taxpayer's business activity, if reasonable:

"(1)   Separate accounting;

"(2)   The exclusion of any one or more of the factors;

"(3)   The inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this state; or

"(4)   The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.

"ORS 314.670 permits a departure from the allocation and apportionment provisions of [UDITPA] only in limited and specific cases. ORS 314.670 may be invoked only where unusual fact situations (which ordinarily will be unique and nonrecurring) produce incongruous results under the apportionment and allocation provisions contained in [the UDITPA statutes].

"In the case of certain industries such as * * * television * * * the foregoing rules in respect to the apportionment formula do not set forth appropriate procedures for determining the apportionment factors. Nothing in ORS 314.670 or the rules adopted thereunder shall preclude the Department from establishing appropriate procedures under ORS 314.655 to ORS 314.665 or under ORS 314.280 for determining the apportionment factors for each such industry, but such procedures shall be applied uniformly."

In essence, the rule promulgated under ORS 314.280(1) (which sets out reporting requirements for utilities and financial organizations) required taxpayer to conform to the same presumptive method of reporting income required under the UDITPA, ORS 314.615 *et seq* (which sets out reporting methods for other taxpayers).

Taxpayer argues that a comparison of the wording and purposes of ORS 314.615 and 314.280 shows that it was improper for the department to incorporate, by reference, OAR 150-314.670-(A) into rules and regulations adopted pursuant to ORS 314.280(1). We agree for two reasons: (1) the text and context of ORS 314.615 and 314.280 indicate a specific legislative intent to *exclude* utilities from the burden of a uniform presumptive (UDITPA) regime; and, in any event, (2) the text of ORS 314.280 is inconsistent with the standard adopted by reference from OAR 150-314.670-(A).

Put simply, taxpayer argues that the text of OAR 150-314.670-(A), which the department had incorporated by reference into OAR 150-314.280-(I) under ORS 314.280(1), utilized a standard that shifted the focus of ORS 314.280(1) away from the *fair and accurate* reflection of a reporting taxpayer's *net income* (as required by that statute) to whether the reporting method *fairly* represented the taxpayer's *business activity* in the state and promoted *uniformity* of tax reporting among UDITPA jurisdictions. The latter standards, taxpayer is arguing, may be pertinent to UDITPA, but they cannot be squared with the directions in ORS 314.280(1).

The distinction between "net income" and "business activity" is important. In the Tax Court, taxpayer argued that, by virtue of the larger television market in Seattle, taxpayer's Seattle station could charge more for advertising than could the Portland station. Taxpayer's Seattle station, a station substantially similar in size and activity to taxpayer's Portland station, thus makes more *"net income"* than taxpayer's Portland station, without a corresponding difference in property value or payroll amount. The result, as "business activity" is determined under the UDITPA method of reporting, is a disproportionate distribution of taxpayer's overall income to Oregon, based on factors that do not accurately reflect "net income of the *business done within the state.*" ORS 314.280(1) (emphasis added). In other words, taxpayer argues that, under the department's required method of reporting, income earned in Washington will be taxed in Oregon.

■   The issues being those of administrative authority and statutory construction, we turn now to taxpayer's statutory arguments. When interpreting a statute, this court's task is to discern the intent of the legislature. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993) (discussing methodology). In attempting to discern the intent of the legislature, we first examine the text and context of the statute. If the intent is clear from those inquiries, further inquiry is unnecessary. *Id.* at 611.

The first of taxpayer's arguments relies on the text and context of ORS 314.280(1) and 314.315. Taxpayer argues that the context in which the UDITPA regime was enacted

indicates that the legislature specifically intended to exclude utilities from that regime. We begin, therefore, with that context.

UDITPA was enacted in 1965 as part of a nationwide effort to promote uniform allocation of income, produced by multi-state businesses, to individual states in which the business activity took place. The previous tax reporting statute, ORS 314.280, provided for two methods of reporting for corporations doing business both within and without Oregon. In 1939, the provision appeared as follows:

"(a) If the gross income of a corporation is derived from business done both within and without the state, the determination of net income shall be based upon the business done within the state, and the commission shall have the power to permit or require either the segregated method of reporting or the apportionment method of reporting, under the rules and regulations adopted by the commission, so as fairly and accurately to reflect the net income of the business done within the state.

"(b) The provisions of subsection (a) dealing with the apportionment of income earned from sources both within and without the state of Oregon are designed to allocate to the state of Oregon on a fair and equitable basis a proportion of such income earned from sources both within and without the state. Any taxpayer may submit an alternative basis of apportionment with respect to its own income and explain that basis in full in its return. If approved by the tax commission that method will be accepted as the basis of allocation." Or Laws 1939, ch 489, § 3 (codified as OCLA § 110-1507); *Ore.-Nev.-Calif. Freight v. Tax Com.*, 223 Or 314, 317 n 1, 353 P2d 541 (1960) (setting out statute), *appeal dismissed* 364 US 627 (1961).

By 1957, *all* taxpayers earning income within and without the state were subject to the Tax Commission's rules and regulations "permitting or requiring" *either* the segregated or apportionment method of reporting "so as fairly and accurately to reflect the net income of the business done within the state." *See* Or Laws 1957, ch 632, § 4 (adding nonresident individuals to tax apportionment statute). By 1965, the year in which the legislature enacted the UDITPA provisions, the Tax Commission had adopted rules under

ORS 314.280. One of those rules, Reg 314.280(1)-(A), provided in part:

> "*The method to be used in determining the portion of the total income that is properly allocable to this state depends upon the circumstances in each case, and no rule of universal application can be stated.* In most cases the circumstances are such that the income arising from the business done in Oregon must be determined by the apportionment method (Reg. 314.280(1)-(B)). The segregated accounting method (Reg. 314.280(1)-(C)) is appropriate where the business or activity in and out of the state cannot be classed as unitary." (Emphasis added.)

Reg 314.280(1)-(B) then provided in part:

> "If the business of the taxpayer is carried on both within and without this state, and the income properly attributable to Oregon may be fairly reflected only by treating the business within and without the state as a unitary business, the apportionment method must be used. The term 'unitary business' means that the taxpayer to which it is applied is carrying on a business, the component parts of which are too closely connected and necessary to each other to justify division or separate consideration as independent units. *Where Oregon activities are a part of a unitary business carried on within and without the state, the portion of the unitary income subject to tax in Oregon will be determined by the apportionment method. Where the activities carried on within the state are separate from the activities carried on outside of the state, the income subject to tax may be determined upon a separate accounting of the Oregon activities.* Basically, if the operation of a business within Oregon is dependent on or contributes to the operation of the business outside the state, the entire operation is unitary in character, and the income from Oregon activities will be determined by the apportionment method. In all cases where the business is unitary, some type of an apportionment formula will generally be employed, not separate accounting." (Emphasis added.)

Finally, Reg 314.280(1)-(C) provided in part:

> "If the business is such that the use of the apportionment method is not required by Reg. 314.280(1)-(B), then the income arising from the business conducted within this state must be determined by the separate accounting method." *Utah Const. & Mining v. Tax Com.*, 255 Or 228, 230-31 n 1, 465 P2d 712 (1970) (setting out regulations).

It was in that context that the 1965 legislature enacted UDITPA, ORS 314.605 to 314.670 (1965), while retaining the material provisions of ORS 314.280 (1957) for the determination of a "fair" and "accurate" reporting method for utilities and financial organizations. Or Laws 1965, ch 152, § 22. Viewed in its proper context, therefore, UDITPA was an exception to the pre-existing regime set out in ORS 314.280, not vice versa.

Having outlined the context of the 1965 enactment of UDITPA, we now turn to taxpayer's textual argument. ORS 314.615, a part of UDITPA, provides:

> "Any taxpayer having income from business activity which is taxable both within and without this state, *other than activity as a financial organization or public utility or the rendering of purely personal services by an individual*, shall allocate and apportion the net income of the taxpayer as provided in ORS 314.605 to 314.675 [*i.e.*, by the apportionment method, not the segregated method]. *Taxpayers engaged in activities as a financial organization or public utility shall report their income as provided in ORS 314.280 and 314.675.*" (Emphasis added.)

ORS 314.280(1) provides in part:

> "*If a taxpayer has income from business activity as a financial organization or as a public utility* * * * the determination of net income *shall be based upon the business activity within the state*, and the department shall have power to permit or require either the segregated method of reporting or the apportionment method of reporting * * * *so as fairly and accurately to reflect the net income of the business done within the state.*" (Emphasis added.)

■ Taken together, those two statutes, as enacted and amended in 1965, demonstrate a specific legislative intent to exclude utilities, financial institutions, and individuals who provide personal services from the newly created UDITPA provisions. *See PGE*, 317 Or at 611 (context considered in first level of analysis includes provisions of related statutes). Applying the rule of statutory construction that the inclusion of one is the exclusion of the other (*inclusio unius est exclusio alterius*), it is clear that the legislature, by subjecting most corporate taxpayers with income from within and without the state to the UDITPA presumption in favor of the apportionment method, while preserving ORS 314.280 for utilities and

financial organizations, intended to maintain that more flexible and nonuniform regime for those taxpayers. *See Jones v. Skinner*, 159 Or 325, 327, 80 P2d 60 (1938) (stating rule of construction).

■ The exclusion of utilities and financial organizations from UDITPA left those taxpayers under the regulatory regime of ORS 314.280. That regime *did not* impose a reporting presumption on taxpayers. Instead, it based the reporting method on the unitary or nonunitary nature of each business, *ante* at 352. The legislature, by its preservation of that regime for utilities and financial organizations, demonstrated an intent to continue that pre-existing distinction with respect to those taxpayers. OAR 150-314.670-(A), imported from UDITPA into OAR 150-314.280-(I), does just the opposite. Thus, it does not comport with that legislative intent concerning the exclusion in ORS 314.280 for utilities like taxpayer.[7]

The preservation of the earlier reporting regime for utilities and financial organizations, as found in ORS 314.280, is of great importance to taxpayer. Under the earlier regime, a utility had no initial burden to prove that a particular reporting method was "unfair" or "inaccurate." The statute simply allowed a taxpayer to utilize the most accurate method of reporting under rules delineated by the department. It was only after the department determined that a particular set of business circumstances required the use of one reporting method that a rebuttable presumption in favor of that method would arise.

Under the UDITPA statutes, by contrast, the department gains administrative ease and uniformity at the cost of flexibility and — possibly, in some cases — even accuracy. In that regime, a burden is placed on the taxpayer to show that the uniform method of reporting fails fairly to reflect business activity within the state. Then, as is discussed at greater

---

[7] We do not mean that an agency is "locked in" to the rules and regulations that it has in force whenever the legislature demonstrates an intent to preserve a particular regulatory regime in the face of other related revisions. The department surely could change its regulations under ORS 314.280 after the 1965 enactment of UDITPA. We note only that, when the legislature demonstrates a clear intent to treat a small class of taxpayers *differently* and more *individually* than another class of taxpayers, the agency cannot undo that intent by rule.

length below, a taxpayer is required to show that the alternative to the uniform method is "reasonable" and will not create or promote a lack of "uniformity." It is clear, from the text and context of the statutes, that the legislature intended to leave in the advantages of individual judgment and flexibility with respect to utilities and financial institutions when it enacted UDITPA for *other* business taxpayers.

■    The foregoing legislative choice is not subject to being overruled by the department. Although ORS 314.280 gives the department authority to promulgate rules, that statute does not give the department authority to place utilities, by rule, under the exact blanket presumption from which they are explicitly exempted by statute. Such a construction of the statute violates the legislative intent behind both ORS 314.280 and 314.670. This court must read the statutes in conformity with that intent, as revealed by the text and context. *See PGE*, 317 Or at 610 (function of court is to identify and carry out legislative intent). Accordingly, we hold that the department's effort to incorporate, by rule, the UDITPA reporting presumption from which utilities and financial organizations were specifically excluded by statute exceeded the department's authority under ORS 314.280(1).

■    Taxpayer makes an alternative, textual argument that we also hold to be well taken: Taxpayer argues that, *even if* a presumptive regime derived from UDITPA were permissible, the text of OAR 150-314.670-(A) is inconsistent with the specific taxpayer protection provided by ORS 314.280(1). The incorporation of OAR 150-314.670-(A) into rules promulgated by authority of ORS 314.280(1) was, therefore, invalid.

The text of the statute, ORS 314.280, and of the UDITPA-based rule, OAR 150-314.670, seek materially different ends. ORS 314.280 requires that the reporting method permitted or required by rule of the department "*fairly and accurately* reflect the *net income* of the business done within the state." In contrast, OAR 150-314.670 allows alternatives to the presumptive apportionment method of reporting only when that method "do[es] *not fairly* represent the extent of the taxpayer's *business activity* in this state." (Emphasis added.) By incorporating OAR 150-314.670(A) into OAR 150-314.280(I), the department has, by rule, attempted to

reduce its statutory obligation to permit or require a method of reporting that fairly *and accurately* reflects *net income* to one that only fairly represents the taxpayer's *business activity*. ORS 314.280(1). But ORS 314.280(1) has, from its beginning, required nothing less than a fair and accurate reflection of net Oregon *income. Hines Lumber Co. v. Galloway*, 175 Or 524, 530, 154 P2d 539 (1944), a prior decision of this court interpreting ORS 314.280(1), illustrates that point.

In *Hines Lumber*, a lumber company earning income within and without Oregon argued that it should not be required to pay an excise tax on net income produced in Oregon, because the company suffered a net loss of income nationwide. This court's answer to that argument is particularly interesting, given the arguments made by the parties before us:

"The corporation excise tax [the first version of ORS 314.280] was created by 1929 General Laws of Oregon, Ch. 427. Section 110-1507 is an amended form of § 7 of the 1929 act, which read as follows:

" 'Allocation. If the gross income of a corporation is derived from business done both within and without the state, the determination of the net income shall be based upon the business done within the state and the commission shall adopt such recommendations and regulations as will fairly and accurately reflect the net income of the business done within the state.'

"Chapter 273, § 5 of 1931 Oregon Laws, substituted the word 'rules' for the term 'recommendations' found in the original act. Chapter 489, § 3, 1939 Oregon Laws, again amended § 7 of the original act. The amendment of 1939 placed § 7 into the form in which it now appears as § 110-1507, O.C.L.A.

"It will be seen from the foregoing that from the outset § 7 has said that if the gross income of a corporation is derived from business done both within and without Oregon, 'the determination of the net income shall be based upon the business done within the state.' Those words indicate that the base of the tax assessed against corporations which do business both within and without this state is not their overall net income, as the [taxpayer]'s argument insists, but their 'business done within the state,' that is, within Oregon.

"* * * * *

"*The manner in which the interpretation urged by the [taxpayer] would do violence to the measuring stick set forth in the act may be more clearly seen if one takes as an example a corporation whose Oregon business resulted in a loss, but whose business done in other states yielded an over-all profit. Under the [taxpayer]'s interpretation, the [tax commission] would be authorized to allocate to this state a part of the corporation's over-all net income and then assess a tax based upon it.* Such a tax would be at variance with the principle that the amount exacted is payment for the privilege of earning a net income in this state." *Id.* at 532-35 (emphasis added).

In contrast to the *Hines Lumber* court's interpretation of the wording in ORS 314.280(1), the department has now adopted, by rule, a presumptive regime that may require the inaccurate allocation of net income produced outside the state to Oregon. This is so because: (1) the UDITPA provisions, incorporated by rule into ORS 314.280(1), provide only a narrow exception to the uniform apportionment method of reporting; (2) the burden is on the taxpayer to demonstrate that the exception should be granted; and (3) that narrow exclusion is not based on accuracy of net income. ORS 314.670; OAR 150-314.670. *See also Donald M. Drake Co. v. Dept. of Rev.*, 263 Or 26, 30-32, 500 P2d 1041 (1972) (exclusion from UDITPA is narrow in scope) (quoting Keesling & Warren, *California's Uniform Division of Income for Tax Purposes Act (Part I)*, 15 UCLA L Rev 156 (1967)).

This court's previous interpretation of the UDITPA exception illustrates its incompatibility with ORS 214.280. In *Twentieth Century-Fox Film v. Dept. of Rev.*, 299 Or 220, 700 P2d 1035 (1985), this court interpreted and applied OAR 150-314.670 consistent with ORS 314.670, a UDITPA statute. This court concluded that, when asked to grant an exemption from the presumptive method of reporting under UDITPA, the primary factors for consideration should be (1) whether the apportionment method "fairly represents the extent of the taxpayer's business activity in this state," and (2) whether the taxpayer's alternative method of allocation is "reasonable." 299 Or at 233. The burden is on the taxpayer to show that the apportionment method does *not* "fairly represent * * * business activity" and that the taxpayer's alternative is "reasonable." Neither of those considerations allows a

taxpayer successfully to challenge a rule based on its mere failure *accurately* to reflect *net income* — the legislative standard in ORS 314.280(1).

Under OAR 150-314.670-(A), even if the taxpayer could show that the apportionment method does not fairly reflect "business activity," the taxpayer also must show that its alternative method of reporting is "reasonable." Under *Twentieth Century-Fox Film*, an alternative method is "reasonable" only if: (1) the division of income under that system fairly represents business activity and would, if applied uniformly in all states, tax 100 percent of the taxpayer's income; (2) the division of income would not create or foster lack of uniformity among UDITPA jurisdictions; and (3) the division of income would reflect the economic reality of the business activity engaged in by the taxpayer in Oregon.

This court's construction of OAR 150-314.670-(A) in *Twentieth Century-Fox Film* illustrates that OAR 150-314.670 specifically promotes the legislative goals of the UDITPA statutes, namely, uniformity and 100 percent taxation among the states. Those goals are *inconsistent* with the goals of ORS 314.280. That statute seeks a *fair* and *accurate* method of reporting *net income in Oregon*. Uniformity is not part of its equation.

Application of the inconsistent standards and goals of OAR 150-314.670-(A) to taxpayer's claim has caused the department and the Tax Court to fail to grasp taxpayer's central argument, which is that the apportionment method of reporting does not "accurately" reflect the "net income of [Fisher Broadcasting Corporation] done in this state." ORS 314.280. The Tax Court's response to taxpayer's argument illustrates the error. Without first considering whether OAR 150-314.670-(A) fits within the legislative direction of ORS 314.280, the Tax Court applied that rule as this court interpreted it in *Twentieth Century-Fox Film*. The Tax Court held:

> "The undisputed facts demonstrate that plaintiff is a unitary business. Accordingly, the test set forth in *Twentieth Century-Fox Film* applies to plaintiff. Plaintiff has not passed the test. Rather, *it focused its proof on which method*

*more fairly and accurately reflects its net income.* The scope of the test is not just net income, but also the extent of business done in the state.

"* * * * *

"Plaintiff argues that the apportionment formula 'unfairly allocates KOMO's large market profit to Oregon * * * .' Again, however, this does not address the extent of plaintiff's business activity in Oregon and whether the apportionment formula fairly reflects that business." *Fisher Broadcasting*, 13 OTR at 39 (emphasis added).

The application of OAR 150-314.670-(A) to taxpayer was error. OAR 150-314.670-(A) requires a taxpayer, challenging the apportionment method of reporting, to prove more than it is permissible to require of a taxpayer under ORS 314.280. We hold that OAR 150-314.280-(I), the rule incorporating OAR 150-314.670-(A) by reference, exceeds the department's rulemaking authority granted by statute.

In conclusion, we hold that the department's incorporation of OAR 150-314.670-(A) into OAR 150-314.280-(I), by reference, is invalid for two reasons: (1) the legislature has excluded utilities from the UDITPA regime and, in doing so, has chosen to maintain the flexibility and accuracy of ORS 314.280(1) over the administrative ease of UDITPA; and (2) OAR 150-314.280-(I), as adopted, is inconsistent with the text of ORS 314.280 and, thus, exceeds the rule-making authority granted by that statute.

The judgment of the Tax Court is reversed and the case is remanded to the Department of Revenue for further proceedings consistent with this opinion.