AT&T,
for itself and on behalf of
certain combined subsidiaries,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4438)

Oral argument on Plaintiff's Motion for Summary Judgment was held July 20, 2000, in the courtroom of the Oregon Tax Court, Salem.

David L. Canary, Garvey Schubert & Barer, Portland, and John H. Gadon, Lane Powell, Spears, Lubersky, Portland, argued the cause and filed the motion for Plaintiff (taxpayer).

James C. Wallace, Assistant Attorney General, Department of Justice, Salem, argued the cause and filed the reply for Defendant (the department).

Decision for Defendant rendered August 31, 2000.

**CARL N. BYERS, Judge.**

This appeal seeks to extend the holding of *See Sherwin-Williams Co. v. Dept. of Rev.*, 14 OTR 384 (1998), *aff'd* 329 Or 599, 996 P2d 500 (2000). to a utility taxable under ORS 314.280.[1] Plaintiff (taxpayer) asserts that the statute and its accompanying administrative rules require gross receipts from invested working capital to be included in the sales-factor denominator. The matter is before the court on taxpayer's motion for summary judgment and Defendant Department of Revenue's (the department) response. The court has considered the memoranda submitted and oral arguments made July 20, 2000, in the courtroom of the Oregon Tax Court, Salem.

## FACTS

Taxpayer is a telecommunication company incorporated in New York. During the tax years in question, 1985 through 1989, taxpayer conducted business in Oregon as well as in other states. As a public utility within the meaning of ORS 314.610(6), taxpayer was required to report its Oregon taxable income in accordance with ORS 314.280. In doing so, taxpayer applied the three-factor formula prescribed by OAR 150-314.280-(A) through (F).

Taxpayer regularly invests working capital in short-term securities such as United States Treasury bills and bonds, commercial paper, certificates of deposit, and repurchase agreements. Its objective in making such investments is to earn income on otherwise idle cash. Taxpayer included the gross receipts from the sales and redemption of investment securities in the denominator of the sales factor used to compute its Oregon apportionment percentage.

The department audited taxpayer's returns and determined that only net income, not gross receipts, should be included in the denominator in the sales factor. The department recalculated the apportionment percentages, resulting in additional taxes owing for the years in question.

---

[1] All references to the Oregon Revised Statutes are to the 1987 replacement part.

## ISSUE

Are gross receipts from the sales of intangibles by a public utility includible in the denominator of the sales factor?

## ANALYSIS

In *Sherwin-Williams*, this court held that the definition of "sales" in ORS 314.610 as "gross receipts" necessarily included gross receipts from the sale of intangible assets. 14 OTR 384. In that case, the taxpayer was a national corporation doing business interstate subject to taxation under ORS 314.605 to ORS 314.675 (UDITPA). Here, taxpayer is a public utility taxable under ORS 314.280, which provides, in part:

> "(1) If a taxpayer has income from business activity * * * as a public utility * * * which is taxable both within and without this state * * * the determination of net income shall be based upon the business activity within the state, and the department shall have power to permit or require either the segregated method of reporting or the apportionment method of reporting, under rules and regulations adopted by the department, so as fairly and accurately to reflect the net income of the business done within the state."

Taxpayer elected to use the apportionment method. The department does not dispute taxpayer's use of that method but contends that taxpayer cannot include gross receipts from the sale of intangibles. Taxpayer points to the "rules and regulations adopted by the department" as authorized by ORS 314.280. One of those rules, OAR 150-314.280-(B), states:

> "The definitions of 'business income,' 'commercial domicile,' 'compensation,' 'financial organization,' 'non-business income,' 'public utility,' 'sales,' and 'state,' contained in ORS 314.610 and the related rules are by this reference incorporated herein and made a part of this OAR 150-314.280-(B).

> " 'Taxpayer' means a financial organization or a public utility."

Taxpayer reasonably argues that if the state directs taxpayer to use the same method and definitions that were

construed and applied by the Supreme Court in *Sherwin-Williams*, it will arrive at the same result.

The department's response is less than crystal clear. The department acknowledges that it "did have and continues to have rules that incorporate by reference ORS 314.610" for the definition of sales. However, the department argues that there is no presumption of correctness as there is under UDITPA. The department asserts that "if a correction to a factor, as reported by the taxpayer, more fairly and accurately apportions net income, then the defendant must make such correction." The department cites as authority for that position OAR 150-314.280-(M) as amended December 28, 1995.

This court must look to the law in effect during the years in question. During the period 1985 through 1989, ORS 314.280 gave the department limited power. It could require the taxpayer to use either the segregated method or the apportionment method of reporting. However, that power was to be exercised "under rules and regulations" that insured whichever method was required would "fairly and accurately" reflect the net income of the business done within the state. The rule in effect during the years in question, OAR 150-314.280-(M), stated:

> "If the allocation and the apportionment provisions of OAR 150-314.280-(A) to 150-314.280-(L) do not fairly represent the extent of the taxpayer's business activity in this state *and* result in the violation of the taxpayer's rights under the Constitution of this state or of the United States, the taxpayer may petition for and the department may permit, or the department may require, in respect to all or any part of the taxpayer's business activity:

> "(1)   Separate accounting;

> "(2)   The exclusion of any one or more of the factors;

> "(3)   The inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this state; or

> "(4)   The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income." (Emphasis added.)

The scope of the rule is clearly limited to situations where the apportionment provisions do not fairly represent the extent of the taxpayer's business activity in the state *and* results in a violation of the taxpayer's constitutional rights. There is no claim here that taxpayer's rights were violated under the constitution. Therefore OAR 150-314.280-(M) is not applicable.

■ As noted, the department amended OAR 150-314.280-(M) effective December 31, 1995, eliminating the requirement of a constitutional violation. However, it continues to allow only a change in the method of apportionment, such as excluding a factor or including additional factors. The rule does not and has never indicated that the department can unilaterally redefine "sales" or "gross receipts" on an ad hoc basis to suit its concept of fairness.

The department contends that as a result of the Supreme Court's decision in *Fisher Broadcasting, Inc. v. Dept. of Rev.*, 321 Or 341, 898 P2d 1333 (1995), there is a "rebuttable presumption" in favor of the department's "sales factor." *Fisher* held that the legislature did not intend for public utilities taxable under ORS 314.280 to be subject to the presumptive-apportionment rules of UDITPA. The Supreme Court found that the focus of ORS 314.280 is on fair and accurate reporting of net income. As the department itself points out, *Fisher* held that utility taxpayers were left under the pre-existing regulatory regime of ORS 314.280. *See* 321 Or at 354. The key words are "regulatory regime." The department is not trying to enforce its regulatory regime but is acting contrary to it. The department is not proposing a new or different method of reporting, but a new definition of "sales." The department cannot "correct" its own definition of "sales" in that manner, otherwise the rules become meaningless.

The department argues that inclusion of gross receipts from sales of securities and other intangibles clearly distorts taxpayer's apportionable income. That may be, but the remedy is not an ad hoc "rewriting" of its own rules. As in *Sherwin-Williams*, the resolution must be by amendment of the statute or administrative rule.

■   The department also argues that OAR 150-314.665-(3)(2) prohibits inclusion of gross receipts. However, that rule applies only if the business income from intangible property "cannot readily be attributed to any particular income producing activity of the taxpayer." OAR 150-314.665-(3)(2) defines income-producing activity as "transactions and activity directly engaged in by the taxpayer in the regular course of its trade or business for the ultimate purpose of obtaining gains or profit." The rule indicates that such activity includes but it is not limited to "the sale, licensing, or other use of intangible personal property." *Id.* Actively investing and reinvesting in securities is a particular income-producing activity engaged in for the ultimate purpose of obtaining gains or profit. Because the income is attributed to a particular income-producing activity, it does not come within the ambit of the above rule.

■   The department suggests that taxpayer's gross receipts from its investments do not constitute gross receipts as that term is used in the statute. OAR 150-314.280-(B) adopts the definition of "sales" as found in ORS 314.610 and the related rules. ORS 314.610 defines "sales" as "all gross receipts" not allocated under ORS 314.615 to ORS 315.645. Neither the statutes nor the department's rules define "gross receipts." The primary focus of OAR 150-314.610 is in distinguishing business income from nonbusiness income. That rule applies a broad definition of business income intended to cover almost any profit-oriented activity. There is no question that taxpayer's income from its investment activity is business income.

The department argues that including gross receipts from the investment of intangibles distorts the sales numerator because much of it is a return of capital. However, that is true of many sales, particularly of tangible property. In fact, the department's rules take a broad approach and apparently intend to cover situations where many of those receipts constitute a return of capital. Taxpayer's affidavits indicate that taxpayer regularly invests its working capital in securities to obtain income and profit from the purchase, sale, and redemption of securities. There are no contrary facts or affidavits to indicate that those amounts do not constitute gross receipts.

Based on the above analysis, the court concludes that the department's rules by definition require the inclusion of gross receipts from the sale of intangibles in the sales denominator. Now, therefore,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment is granted. Plaintiff to recover costs.