IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| JAMES L. DONOHOE and JULIA R. MORISON-DONOHOE, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 150521N |
| v. | ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) | |
| Defendant. | ) | **FINAL DECISION**[1] |

Plaintiffs appealed the Department of Revenue's (the Department) Notice of Deficiency

Assessment dated October 22, 2015, for the 2011 tax year. A trial was held on May 4, 2016, in

the courtroom of the Oregon Tax Court in Salem, Oregon. Casey Moore, CPA, appeared on

behalf of Plaintiffs. Dane Palmer, Tax Auditor, appeared on behalf of the Department. Plaintiff

Julia R. Morison-Donohoe (Donohoe) testified at trial. Plaintiffs' Exhibits 1 through 11 and the

Department's Exhibits A through F were received without objection.

## I. STATEMENT OF FACTS

At trial, the parties stipulated to several facts. The parties agreed that Plaintiffs paid

$28,937 for a foster care home for Donohoe's mother (Morison). The parties stipulated that the

foster care home was a "level 2 facility" and that a "level 2 facility" can provide at least three of

the daily living activities listed in IRC section 7702B(c)(2)(B). However, the parties disagreed

whether Plaintiffs may deduct the payments to the foster care home under IRC section 213. The

parties agreed that Plaintiffs paid $100,000 to Tommy Pham (Pham) for "consulting fees"

---

[1] This Final Decision incorporates without change the court's Decision, entered August 5, 2016. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

associated with their poker card room business. They disagreed whether Plaintiffs may deduct those consulting fees given that they did not issue a Form 1099-MISC until 2015.

A.    *Medical Expenses*

Donohoe testified that she decided to put Morison in foster care in early 2000 on the advice of Morison's doctor. She testified that Morison was approximately 80 years old at that time. Donohoe testified that she tried to find the medical records from that time, but they were not available and had been destroyed. She testified that she asked both Peace Health and Morison's doctor for the records.

Plaintiffs were able to produce some medical records detailing Morison's health conditions in 2010 and 2011. A physician's authorization for ambulance transportation for Morison dated February 17, 2010, described Morison's "medical necessity information." (Ptf's Ex 8 at 1.) The form indicated Morison was not able to get up from bed without assistance and was not able to ambulate. (*Id.*) It stated that any means of transportation other than by ambulance would endanger Morison's health. (*Id.*) Morison required continuous oxygen and "care/monitoring by trained personnel." (*Id.*) The form was signed by Kathleen M. Patton, GNP. (*Id.*) A medical record entered by Katherine O'Rourke, RN, on February 17, 2010, indicated Morison was at risk for fall and suffered from "bladder/bowel problems." (*Id.* at 3.) A medical record dated February 19, 2010, and signed by a nurse stated Morison suffered from heart failure, COPD, pulmonary hypertension, and diabetes. (*Id.* at 4.) Her activity level was restricted. (*See id.*) A letter from Lynne M. Mumaw, GNP, at Peace Health stated:

> "Mrs. Morison was under my care from 5-20-2011 until her death in 2013. During that time she required assistance with all activities of her daily living due to multiple chronic medical conditions. She required this care on a 24 hour basis and family chose for her to be cared for in an adult foster care home facility."

(Ptfs' Ex 7.)

Donohoe testified that the foster home she used was Morison Landing, which is owned by her sister-in-law. She testified that she did not have a written agreement with the home because none was required. Donohoe testified that the home received "directions" from Morison's doctors. She testified that the home provided Morison with her medications on a set schedule and would call Morison's doctor if medical concerns arose. (*See* Ptfs' Ex 8 at 2.) Palmer asked whether the foster home staffed a licensed nurse or medical practitioner. Donohoe testified that the staff members who provided care were licensed by the State of Oregon, but she did not know if they were licensed nurses or doctors.

Donohoe testified that Morison needed transportation to visit her doctor for medical appointments because she was in a wheelchair and on full-time oxygen. (*See* Def's Ex F at 17, 24-25 (Handi-Cabs invoices, doctor invoices).) She testified that Morison was taking a prescription narcotic and Medicare required Morison to regularly see her doctor and have her blood tested to ensure she was the one receiving the narcotic. Donohoe testified that Morison also had to go to the doctor to receive cortisone injections for knee pain.

Donohoe testified that she had power of attorney to handle Morison's finances in 2011. She testified that Morison had a bank account and received Social Security income of approximately $1,000 per month. Donohoe testified that she did not recall that Morison received any dividend income. Donohoe testified that she paid Morison's bills out of her own accounts and gave Morison her money. She testified that her CPA suggested claiming Morison as a dependent in 2011 because Plaintiffs paid more than 50 percent of her expenses.

B.      *Consulting Fees*

Donohoe testified that she paid $100,000 to Pham using five cashier's checks all at one time. She testified that she had a written contract with Pham, who was a consultant for others

besides Plaintiffs.  Donohoe testified that the payments were not "severance" payments.  She testified that she has always used a CPA and she did not know whether Forms 1099-MISC were filed because she relied upon her CPA.  Donohoe testified that a 2011 Form 1099-MISC was filed with the IRS by her tax attorney during the Department's audit.  (*See* Def's Ex E at 9-11.) That form was dated January 14, 2015.  (*Id.*)  Donohoe testified that she relied entirely on her CPA and tax attorney.

## II.  ANALYSIS

The two issues presented are:  (1) whether Plaintiffs are entitled to a medical expense deduction in 2011 for the foster home care expenses they incurred for Morison; and (2) whether Plaintiffs are entitled to a deduction for "consulting fees" paid in 2011 when they failed to issue a Form 1099-MISC until 2015.

"[T]he Oregon legislature intended to make Oregon personal income tax law identical to the Internal Revenue Code [IRC] * * * subject only to modifications specified in Oregon law." *Voy v. Dept. of Rev.*, 20 OTR 179, 181 (2010), quoting *Ormsby v. Dept. of Rev.*, 18 OTR 146, 151 (2004) (internal quotation marks omitted); ORS 316.007.[2]  Thus, the legislature adopted by reference the federal definition for deductions, including those under IRC section 162 for trade or business expenses and under IRC section 213 for medical expenses.  *See Austin v. Dept. of Rev.*, 20 OTR 20, 22 (2009) (regarding IRC section 162); *Dept. of Rev. v. Rakocy*, 15 OTR 347, 349 (2001) (regarding IRC section 213).

Deductions are "a matter of legislative grace" and taxpayers bear the burden of proving their entitlement to the deductions claimed.  *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992).  "In all proceedings before the judge or a magistrate of the tax

---

[2] Unless otherwise noted, the court's references to the Oregon Revised Statutes (ORS) are to 2009.

court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief[.]" ORS 305.427. Plaintiffs must establish their claim by a preponderance of the evidence. "Preponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).

A.    *Medical Expense Deduction*

A taxpayer is generally allowed a deduction for expenses paid for the medical care of the taxpayer, a spouse, or a dependent, if those expenses are not compensated by insurance or otherwise. IRC § 213(a). The deduction is allowed to the extent the expenses exceed 7.5 percent of adjusted gross income. *Id.* The definition of "medical care" includes "amounts paid * * * for qualified long-term care services (as defined in section 7702B(c))[.]" IRC § 213(d)(1)(C).

1.    *Medical care of a dependent*

At trial, the Department raised the issue of whether Morison was a "qualifying relative" under the IRC section 152 dependent exemption. That issue had not previously been raised by the Department. Palmer asked questions regarding Morison's sources of income. In response to those questions, Donohoe testified that Morison received approximately $1,000 in Social Security income in 2011. She did not recall that Morison received any dividend income.

Dependents include qualifying relatives of the taxpayer. IRC § 152(a)(2). To be a qualifying relative, an individual must satisfy certain requirements, including gross income that is less than the exemption amount. IRC § 152(d)(1)(B). The 2011 exemption was $3,700. *See* IRS Pub 501 (2011). Based on Donohoe's testimony, Morison received Social Security

income of approximately $12,000 in 2011. That amount exceeds $3,700. However, under IRC section 86, some or all of that income may be excluded from "gross income" depending on Morison's other sources of income, if any. Ultimately, the court cannot determine whether Donohoe's mother was a "qualifying relative." Because the issue was raised for the first time at trial, the Department bears the burden of proof on that issue. *See* ORS 305.427 (the burden of proof falls upon the party seeking affirmative relief). The evidence presented is insufficient for the court to conclude that Morison was *not* a qualifying relative dependent of Plaintiffs in 2011.

2. *Qualified long-term care services*

Taxpayers may deduct expenses for medical care, which includes qualified long-term care services as defined in IRC section 7702B. IRC § 213(a), (d). IRC section 7702B(c)(1) defines "qualified long-term care services" as

> "necessary diagnostic, preventive, therapeutic, curing, treating, mitigating, and rehabilitative services, and maintenance or personal care services, which –
>
> > "(A) are required by a chronically ill individual, and
> >
> > "(B) are provided pursuant to a plan of care prescribed by a licensed health care practitioner."

A "chronically ill individual" includes one "who has been certified by a licensed health care practitioner as – (i) being unable to perform (without substantial assistance from another individual) at least 2 activities of daily living for a period of at least 90 days due to a loss of functional capacity." IRC § 7702B(c)(2)(A). The activities of daily living are eating, toileting, transferring, bathing, dressing, and continence. IRC § 7702B(c)(2)(B). To qualify as a "chronically ill individual," a licensed health care practitioner must have certified that the individual meets the requirements within the preceding 12-month period. IRC § 7702B(c)(2)(A).

/ / /

The definition of a "licensed health care practitioner" includes "any registered professional nurse." IRC § 7702B(c)(4).

Based on the Department's adjustments and the parties' arguments at trial, the disputed issues are whether Morison met the definition of a "chronically ill individual" in 2011 and whether her care was "provided pursuant to a plan of care prescribed by a licensed health care practitioner."

        a.      *Chronically ill individual*

Plaintiffs argue that Morison qualified as a "chronically ill individual" based on her inability to perform several of the activities of daily living. They contend that the evidence presented is sufficient to support that conclusion. The Department questions whether Morison was "*certified*" by a licensed health care practitioner as being unable to perform at least two activities of daily living. The Department also questioned whether the letters and medical records provided by Plaintiffs satisfy the "preceding 12-month" requirement under IRC section 7702B(c)(2)(A).

The first question is whether Morison was "certified" as chronically ill by a licensed health care practitioner. The term "certified" is not defined in the applicable code section. *Webster's Dictionary* defines "certify" as "to attest esp. authoritatively or formally." *Webster's Third New Int'l Dictionary* 367 (unabridged ed 2002.) The evidence presented was comprised of a letter signed by Morison's nurse and several medical records prepared by nurses. The court finds that the nurse's letter and the medical records provided by Plaintiffs are authoritative and each was prepared by a licensed health care practitioner. The court is persuaded that those documents satisfy the certification requirement under IRC section 7702B(c)(2).

/ / /

The next question is whether the letter and medical records meet the "preceding 12-month" requirement under IRC section 7702B(c)(2)(A). The court understands that requirement to mean that Morison was certified as a "chronically ill individual" between January 1, 2011, and December 31, 2011. The letter from Morison's nurse established that she needed care with all activities of daily living as of May 20, 2011, and continuing until her death in 2013. The medical records from 2010 establish that Morison's condition was similar in 2010. More likely than not, Morison's condition did not improve between February 2010 and May 2011. The court finds that Morison was a "chronically ill individual" during all of 2011.

b. *Plan of care*

The qualified long-term care services must have been provided pursuant to a plan of care prescribed by a licensed health care practitioner. The nurse's letter stated that Morison "required assistance with all activities of her daily living"; she "required this care on a 24 hour basis"; and Morison's "family chose for her to be cared for in an adult foster care home facility." (Ptfs' Ex 7.) On that evidence, the court is satisfied that Morison's care in 2011 was provided pursuant to a plan prescribed by a licensed health care practitioner.

B. *Consulting Fee Deduction*

The parties agreed that Plaintiffs paid $100,000 to Pham for consulting fees associated with their poker card room business. The Department disallowed Plaintiffs' deduction for contract labor expenses because Plaintiffs "failed to timely file the information returns or 1099s." (*See* Ptfs' Ex 2 at 2-3.)

The Department disallowed the deduction pursuant to ORS 305.217, which states:

"No deduction shall be allowed under ORS chapter 316, 317 or 318 to an individual or entity for amounts paid as wages or as remuneration for personal services *if that individual or entity fails to report the payments as required by ORS 314.360 or 316.202 on the date prescribed therefor* (determined with regard

to any extension of time for filing) unless it is shown that the failure to report is due to reasonable cause and not done with the intent to evade payment of the tax imposed by ORS chapter 316 or to assist another in evading the payment of such tax."

(*See id.* (emphasis added).) Thus, to determine whether the deduction is disallowed under ORS 305.217, the court must determine whether Plaintiffs were required to report their payment to Pham under ORS 314.360 or 316.202. ORS 316.202 establishes employers' reporting requirements to the Department of employee withholding. That statute is not applicable here because the parties agreed that Pham was a contractor. The question is whether Plaintiffs were required to report their payment to Pham under ORS 314.360.

1.    *Filing requirement under ORS 314.360*

ORS 314.360(1) states:

"Fiduciaries required to make returns under laws imposing tax upon or measured by net income, proprietorships, partnerships, corporations, joint stock companies or associations or insurance companies, having places of business in this state, in whatever capacity acting, including lessees or mortgagors of real or personal property, fiduciaries, employers, purchasers of stumpage and all officers and employees of the state or of any political subdivisions of the state, having the control, custody, disposal or payment of interest (other than interest coupons payable to bearer), rent, dividends, salaries, fees, wages, the purchase price of stumpage, emoluments or other fixed or determinable annual or periodical gains, profits and income, paid or payable, during any year to any taxpayer, shall make return thereof, under oath, to the Department of Revenue, under such regulations and in such form and manner and to such extent as it may prescribe."

ORS 314.360(3) states that the Department "may prescribe circumstances under which the filing requirements under this section are waived." Pursuant to ORS 314.360 and its general rulemaking authority under ORS 305.100, the Department promulgated OAR 150-314.360 (2011), which states in pertinent part:

"(1) Information returns are required to be filed electronically with the department as set forth in section (3) of this rule and using federal due dates. For purposes of this rule, information returns required to be filed electronically include:

"(a) 1099-MISC Miscellaneous Income;

"(b) 1099-G Certain Government Payments;

"(c) 1099-R Distributions from Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, etc.

"(d) W2-G Certain Gambling Winnings

"(2) Exceptions for Salaries and Wages. See ORS 316.202 and related rules.

"(3) Information returns listed in section (1) of this rule, where the recipient, winner, or the payer has an Oregon address must be filed electronically as follows:

"(a) For payers that issue 250 or more of any one type of information return, electronic filing begins with 2011 forms due in 2012.

"(b) For payers that issue 100 or more but less than 250 of any one type of information return, electronic filing begins with 2012 forms due in 2013.

"(c) For payers that issue more than 10 but less than 100 of any one type of information return, electronic filing begins with 2013 forms due in 2014.

"(4) The department may grant an exception to this filing requirement upon a showing of undue hardship. Undue hardship is based on the facts and circumstances specific to each payer and determined on a case-by-case basis."

The current version of that rule requires "[a]ny person that issues more than 10 information returns" to a recipient with an Oregon address "to file the information returns electronically with the department and using federal due dates." OAR 150-314.360(3). It further states: "In general, taxpayers are not required to file information returns as described in ORS 314.360 except as provided in this rule." OAR 150-314.360(2). The prior version of the rule also stated that, generally, "taxpayers are not required to file information returns as described in ORS 314.360." OAR 150-314.360(1) (2009).[3]

_____

[3] OAR 150-314.360(3) (2009) provides the exception to that general rule: "Notwithstanding any other provision of this rule, the department may require the filing of information returns in situations it deems necessary."

Plaintiffs argue that they did not have a filing obligation with the Department under ORS 314.360 and OAR 150-314.360 because they "were clearly under the required filing threshold of 250 Forms." (Ptfs' Ltr at 4, Apr 20, 2016.) The court agrees that the 2011 rule does not impose any electronic filing requirement upon Plaintiffs. The rule is silent with respect to whether Plaintiffs were obligated to file information returns in another manner, such as by paper copy. Both the preceding version and the current version of OAR 150-314.360 explicitly state that taxpayers have no filing requirement beyond that stated in the rule. It is unclear why that statement was removed from the 2011 version of the rule, although it may have been an oversight given that the language was added back after 2011.

Upon consideration of the various versions of OAR 150-314.360, the court is persuaded that Plaintiffs were not required to file the Form 1099-MISC with the Department for the 2011 tax year. The next question is whether Plaintiffs' failure to timely file the Form 1099-MISC with the IRS bars them from claiming a deduction for contract labor.

2. *Federal requirement for filing Form 1099*

IRC section 6041(a) imposes a reporting requirement upon "[a]ll persons engaged in a trade or business" who make payments to another person for compensation of $600 or more in a taxable year. Taxpayers are required to report such payments on Form 1099. Treas Reg § 1.6041-1(a)(2). IRC section 6721 imposes penalties for failing to file Form 1099. It does not bar the taxpayer from claiming a deduction based on failure to file Forms 1099.

ORS 305.217 makes no reference to a taxpayer's failure to file information returns with IRS. However, the Department's rule, OAR 150-305.217 (2011), states in pertinent part, that "[a]n employer will not be allowed a deduction for wages or payments to individuals for personal services rendered if * * * [t]he employer does not file any information returns, such as

1099's or W-2's, *as required by federal law*, ORS 314.360 or 316.202[.]"  (Emphasis added.)

The Department construes its rule as denying Plaintiffs a deduction for contract labor expenses

because they did not timely file Form 1099-MISC with the IRS.  (*See* Ptfs' Ex 2 at 2-3 (Notice of

Deficiency Assessment).)  The Department also cited a Magistrate Division decision, *Miller v.*

*Dept. of Rev.*, TC-MD 140085C, WL 3817584 (Aug 4, 2014), which upheld the Department's

disallowance of a taxpayers' deduction for payment to five independent contractors for personal

services due to the taxpayers' failure to timely file Forms 1099 with state or federal taxing

authorities.[4]

This court has held it "must give some degree of deference to the department's

interpretation of its own administrative rule."  *Boardman Tree Farm v. Morrow County Assessor*,

20 OTR 361, 367 (2011).  However, the court cannot defer to the Department's interpretation in

this case because it is inconsistent with the statute, ORS 305.217.[5]  That statute denies a

deduction to taxpayers for failure to comply with either ORS 314.360 or 316.202.  As discussed

above, ORS 314.360 and 316.202 establish certain filing requirements with the Department.  The

Department implements ORS 314.360 through its rule, OAR 150-314.360, which references

certain federal forms, including Form 1099-MISC.  However, the Oregon filing requirements are

not coextensive with the federal filing requirements.  For instance, Plaintiffs were required to file

Form 1099-MISC with the IRS based on the total amount of their payments to Pham, but they

---

[4] A few other Magistrate Division decisions have reached the same conclusion.  *See Williams v. Dept. of Rev.*, TC-MD 130420C, WL 509177 (Feb 10, 2014); *Phoudavong v. Dept. of Rev.*, TC-MD 130147N, WL 6858705 (Dec 30, 2013).

[5] The Oregon Supreme Court has held that the Department's rulemaking authority under ORS 305.100 is "interpretative, but not substantive."  *Avis Rent A Car System, Inc. v. Dept. of Rev.*, 330 Or 35, 41, 995 P2d 1163 (2000).  "To the extent that the rule is inconsistent with legislative intent, as determined by this court, the rule is invalid."  *Id.*, citing *Fisher Broadcasting, Inc. v. Dept. of Rev.*, 321 Or 341, 355, 898 P2d 1333 (1995) (legislative choice under statute not subject to being overruled by department regulation); *U. of O. Co-Oper v. Dept. of Rev.*, 273 Or 539, 550-51, 542 P2d 900 (1975) ("[A]n administrative agency may not, by its rules, amend, alter, enlarge or limit the terms of a legislative enactment.").

were not required to file the Form 1099-MISC with the Department under ORS 314.360 and OAR 150-314.360 because they did not issue 250 or more Forms 1099.[6]

The deduction disallowed under ORS 305.217 is based upon a taxpayer's failure to file certain information returns with the Department, not the IRS. OAR 150-305.217 does not extend the circumstances in which ORS 305.217 applies to include Plaintiffs' failure to timely file Form 1099-MISC with the IRS.

### III. CONCLUSION

After careful consideration, the court concludes that, for the 2011 tax year, Plaintiffs are allowed a medical expense deduction under IRC section 213 based upon $28,937 in long-term care expenses. The court further concludes that, for the 2011 tax year, Plaintiffs are entitled to a business expense deduction for $100,000 in contract labor expenses. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is granted.

Dated this ___ day of August, 2016.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on August 23, 2016.*

___

[6] There is no contention in this case that Plaintiffs were required to issue 250 more Forms 1099 and failed to do so.