816 July 10, 2025 No. 27

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE ex rel ABRAHAM TORRES-LOPEZ,
*Petitioner on Review,*

*v.*

Kat FAHRION,
Administrator for Offender Information
and Sentence Computation Unit of the
Oregon Department of Corrections,
*Respondent on Review.*

(CC 22CV16960) (CA A180541) (SC S071194)

En Banc

On review from the Court of Appeals.*

Argued and submitted February 27, 2025.

Jedediah Peterson, Equal Justice Law, Portland, argued the cause and filed the brief for petitioner on review.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

BUSHONG, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

_____

\* Appeal from Washington County Circuit Court, Theodore E. Sims, Judge. 333 Or App 172, 552 P3d 135 (2024).

**BUSHONG, J.**

Relator brought this mandamus case in circuit court to compel the Oregon Department of Corrections (DOC) to grant him credit towards a Marion County prison sentence for the 125 days that he spent in the Clackamas and Marion County jails before he was sent to prison.[1] The circuit court granted relief, but the Court of Appeals reversed, concluding that the circuit court had misinterpreted the governing statute, ORS 137.370(4).[2] *State ex rel Torres-Lopez v. Fahrion*, 333 Or App 172, 552 P3d 135 (2024). We allowed review to resolve two statutory interpretation questions regarding the scope of a trial court's authority under ORS 137.370(4).

The first question is whether a trial court may grant presentence incarceration credit for time served for unrelated "conduct," even when the person has not yet been convicted of a crime or sentenced for that conduct. The second question is whether a person who is held in custody in a local jail awaiting resolution of a pending probation violation matter while at the same time serving an unrelated prison sentence is in "jail" presentencing for purposes of ORS 137.370(4).

Based on the text, context, and history of ORS 137.370(4), we hold that a trial court may grant presentence incarceration credit in both circumstances. As we

---

[1] Under ORS 34.110 and 34.120, circuit courts have jurisdiction to issue a writ of mandamus to compel a public officer to take an action that is required by law. Here, relator sought to compel the Administrator of DOC's Offender Information and Sentence Computation (OISC) unit to give him credit for time he had served in Clackamas and Marion County jails before he was sent to prison after his Marion County probations were revoked. The parties agree—as do we—that the circuit court had mandamus jurisdiction to decide the merits of relator's claim and that OISC's Administrator is the appropriate public officer to be named as the defendant. For ease of reference, we refer to defendant in this opinion as "DOC."

[2] ORS 137.370(4) provides:

"Unless the court expressly orders otherwise, a person who is confined as the result of a sentence for a crime or conduct that is not directly related to the crime for which the sentence is imposed, or for violation of the conditions of probation, parole or post-prison supervision, shall not receive presentence incarceration credit for the time served in jail toward service of the term of confinement."

We analyze the text, context, and legislative history of that provision in detail later in this opinion.

will explain, confinement for certain "conduct"—even in the absence of a "sentence"—is covered by ORS 137.370(4). In addition, the legislature expressly authorized trial courts to order—as the trial court did in this case—presentence credit for time spent in jail awaiting resolution of a probation violation matter even though the person was also serving a prison sentence on an unrelated crime. Accordingly, we reverse the Court of Appeals' decision and affirm the judgment of the circuit court.

## I.  BACKGROUND

A.  *Historical Facts*

The historical facts are procedural, undisputed, and taken from the trial court records. In 2016, relator entered guilty pleas in Marion County Circuit Court in three separate cases. Pursuant to the plea agreements in those cases, relator was sentenced to serve 365 days in jail and placed on 48 months of supervised probation. The plea agreements in two of the cases stated that he would be sentenced to serve 60-month concurrent prison sentences if those probations were revoked. In 2018, relator's probation officer alleged that relator had violated the conditions of his probations, and the Marion County court issued a show-cause order and warrant for his arrest to address those allegations.

Before relator was arrested on the probation violation warrant, he was indicted in Clackamas County Circuit Court, Case No. 18CR85288, on new charges. Based on that indictment, the Clackamas County court issued its own warrant for relator's arrest. On December 21, 2019, relator was arrested on both warrants and held in the Clackamas County Jail. On March 11, 2020, relator pleaded guilty to two counts in the Clackamas County case. Pursuant to the plea agreement, the Clackamas County Circuit Court sentenced relator to serve 13 months in prison on one count and six months in prison on the other with the sentences to run concurrently.

Relator was not immediately transported to prison to begin serving those sentences. Instead, because he was still being held, in part, under the authority of the Marion County probation violation warrant, he was transported to

the Marion County Jail to address the pending probation matter. Relator eventually admitted that he had violated the conditions of his probation, and the court revoked his probation on all counts. On April 24, 2020, relator was sentenced in accordance with his original plea agreements to serve 60 months in prison in two of the Marion County cases, with the prison sentences to run concurrently with each other. The probation revocation judgments in both cases specified that relator was entitled to "credit for time served since December 21, 2019[,] including time credited to Clackamas County case #18CR85288."[3] Thus, the trial court ordered that relator would receive 125 days of presentence incarceration credit—the time between his December 21, 2019, arrest and the April 24, 2020, probation revocation sentencing.[4]

That 125-day period consists of two categories. First, relator was held in custody in the Clackamas County Jail for 82 days—from December 21, 2019 through March 11, 2020—before he was sentenced to prison in his Clackamas County case. During that time, he was being held in custody presentencing in the Clackamas County case, and, simultaneously, held on the probation violation warrant that had been issued in the Marion County cases. Second, for the next 43 days—from March 12 (after sentencing in the Clackamas County case) to April 24 (when he was sentenced upon revocation of probation in the Marion County cases)— he was held in jail in the *physical* custody of the Marion County Sheriff pending resolution of the Marion County probation violation proceedings. He was also in the *legal* custody of the Marion County Sheriff because of the probation violation warrant, and he was, simultaneously, in the *legal* custody of DOC because of the prison sentence in the

---

[3] The trial court later amended the judgments to add the following: "The defendant shall receive incarceration credits pursuant to ORS 137.370(4) and (5) for all time since his arrest on these charges including any time served on other sentences during the time since his arrest on these charges."

[4] The appellate record in this case does not include the transcript of the probation violation and sentencing hearing in the underlying Marion County criminal cases. As explained below, if the court did not give relator 125 days' presentence incarceration credit towards his Marion County prison sentences, then, as a practical matter, relator would not receive any credit at all for that jail time because he would finish serving the concurrent 13-month sentence imposed in the Clackamas County case long before he finished serving the 60-month concurrent sentence imposed in the Marion County cases.

Clackamas County case. After his probation was revoked and he was sentenced to prison in the Marion County cases, he was transported to the physical custody of DOC to serve the remainder of his prison sentences.

B.   *Relator's Challenge to DOC's Sentence Calculation*

When relator was transported to DOC's physical custody, DOC determined that he was entitled to 82 days' presentence incarceration credit towards the 13-month prison sentence in the Clackamas County case to account for the time that he had been held in the Clackamas County Jail from December 21, 2019 to March 11, 2020. DOC did not give relator *any* presentence incarceration credit towards the 60-month prison sentences that he was serving in the Marion County cases, even though the judgments in those cases expressly stated that he was entitled to credit for time served since December 21, 2019.

Relator then asked DOC to recalculate his sentences to give him that credit, but DOC responded that it was unable to give him credit on his sentences in the Marion County cases for the 125-day period from December 21, 2019 through April 24, 2020, as ordered by the Marion County court. DOC explained that, under ORS 137.370(2)(a), relator was only entitled to presentence incarceration credit on the Clackamas County sentence, not the Marion County sentences, for the 82 days that he was held presentencing— that is, from December 21, 2019 to March 12, 2020—in the Clackamas County case. DOC further explained that he was not entitled to presentence incarceration credit for the 43 days from March 12 through April 24, 2020, because he had begun serving his prison sentence in the Clackamas County case, so that time could not be counted as presentence incarceration in jail. DOC concluded that the Marion County court could not order presentence incarceration credit for time held in custody on the Clackamas County case.

Relator then filed a petition for a writ of mandamus in circuit court, asking the court to order DOC to grant him 125 days' credit for time served pursuant to the sentencing court's orders and ORS 137.370(4). That statute provides:

> "Unless the court expressly orders otherwise, a person who is confined as the result of a sentence for a crime or conduct that is not directly related to the crime for which the sentence is imposed, or for violation of the conditions of probation, parole or post-prison supervision, shall not receive presentence incarceration credit for the time served in jail toward service of the term of confinement."

Relator contended that, under that provision, he was entitled to "presentence incarceration credit" for the 125 days that he was held in jail before the Marion County court revoked his probation, because that court had expressly ordered that he was entitled to that credit—that is, the court had "expressly order[ed] otherwise." The trial court agreed with relator and issued the writ. DOC appealed, contending that the trial court had misinterpreted ORS 137.370 and thus erred when it issued the writ. As noted above, the Court of Appeals agreed with DOC and reversed the trial court. We allowed review and, for the reasons explained below, now reverse the Court of Appeals' decision.

## II.  DISCUSSION

The issue on review hinges on the interpretation of ORS 137.370. We review the interpretation of a statute for legal error, applying our established framework in which we seek "to determine the legislature's intended meaning by examining the statutory text in context, taking into account any legislative history that we find helpful." *State v. Wallace*, 373 Or 122, 133, 561 P3d 602 (2024) (citing *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009)).

As noted above, DOC acknowledges that, upon revoking relator's probations and imposing a prison sentence, pursuant to ORS 137.370(4), the Marion County court expressly ordered that relator would receive presentence incarceration credit for the 125 days that he was held in custody from December 21, 2019 to April 24, 2020. In DOC's view, subsection (4) of ORS 137.370 does not apply to any part of the 125-day period in dispute. Instead, according to DOC, subsection (2) of ORS 137.370 is the applicable provision, and relator is not entitled to any credit against his Marion County sentences under that provision. DOC presents two different statutory interpretation arguments in

support of its contention that ORS 137.370(4) does not apply to any part of the 125-day period that is in dispute. First, DOC contends that the statute does not apply during the first 82 days because relator was not confined as the result of a "sentence" during that time. Second, DOC contends that the statute does not apply during the next 43 days because relator was in DOC's custody during that time—serving his prison sentence on the Clackamas County case—and thus, he was not being held in "jail" presentencing.

We reject both contentions. As we will explain, the text, context, and legislative history of ORS 137.370(4) all support the conclusion that the Marion County Circuit Court had authority to order DOC to give relator presentence incarceration credit for the entire 125 days that are at issue. We begin with an overview of ORS 137.370 before turning to the two periods in dispute.

A.   *Overview of ORS 137.370*

As noted above, DOC contends that subsection (2) of ORS 137.370—not subsection (4)—governs sentencing of a person in relator's situation.[5] Subsection (2) of ORS 137.370 provides in pertinent part:

"(2)   *Except as provided in subsections (3) and (4) of this section*, when a person is sentenced to imprisonment in the custody of the Department of Corrections, for the purpose of computing the amount of sentence served the term of confinement includes only:

"(a)   The time that the person is confined by any authority after the arrest for:

"(A)   The crime for which sentence is imposed;

"(B)   A lesser included or greater inclusive offense of the crime for which sentence was imposed; and

"(C)   Any other crime constituting a violation of Oregon law within the same county designated by the sentencing

---

[5] Subsection (2) of ORS 137.370 is part of the context of construing subsection (4). *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (statutory context includes other provisions of the same statute and other related statutes). Another related statute, ORS 137.320(3), provides that it is DOC's responsibility to "compute the defendant's sentence in accordance with the provisions of ORS 137.370." That reference means that DOC's sentence computation is determined in accordance with the applicable provisions of ORS 137.370.

court in the judgment as having been committed as part of the same criminal episode as the crime for which sentence was imposed[.]"

(Emphasis added.) Paragraph (2)(a) of ORS 137.370 thus governs the sentence computation for a single crime, for a lesser or greater included offense, or for multiple crimes committed as part of the same criminal episode. The prefatory words of subsection (2)—"[e]xcept as provided in subsection (3) and (4)"—mean that, for sentences that were *not* based on a single crime, a lesser or greater included offense, or multiple crimes committed as part of the same criminal episode, subsection (3) or subsection (4) applies.[6]

To reiterate, subsection (4) of ORS 137.370 provides:

"Unless the court expressly orders otherwise, a person who is confined as the result of a sentence for a crime or conduct that is not directly related to the crime for which the sentence is imposed, or for violation of the conditions of probation, parole or post-prison supervision, shall not receive presentence incarceration credit for the time served in jail toward service of the term of confinement."

Subsection (4) thus governs sentences imposed for crimes that were not "directly related" to the crime for which a sentence is imposed or for probation, parole, or post-prison supervision violations. And, critically, subsection (4) allows presentence incarceration credit for those crimes if the court "expressly orders" that credit.

Thus, the text of subsections (2) and (4) together suggests that, because relator's Marion County sentence was not based on the same crime for which he was sentenced by the Clackamas County court, or for a lesser or greater included offense, or for "directly related" crimes committed as part of the same criminal episode as the Clackamas County offense, subsection (4)—not subsection (2)—applies. But, as noted above, DOC contends that subsection (4) does not apply, for different reasons, to either the 82 days relator was held in custody in the Clackamas County Jail or to the

---

[6] Subsection (3) of ORS 137.370 is not relevant here. That subsection applies when a judgment of conviction is vacated and a new sentence is thereafter imposed for the same offense, a lesser or greater include offense, or other offenses committed as part of the same criminal episode.

43 days he was held in the Marion County Jail after he was sentenced in the Clackamas County case. We address those arguments in turn, starting with the 82-day period.

B.  *The First Period (82 Days)*

   1.  *Text and context of ORS 137.370(4)*

DOC acknowledges that the Marion County court would have authority under subsection (4) to order presentence incarceration credit that would otherwise be denied under that subsection—that is, to "expressly order[] otherwise"—if subsection (4) applied to relator's situation. DOC contends that subsection (4) does not apply during the 82 days that relator was held in the Clackamas County Jail because relator was not confined during that period as a result of a "sentence" for conduct. DOC does not dispute that relator's confinement during that 82-day period was for *conduct*—the conduct resulting in his Clackamas County charges—that was not directly related to the crime for which the Marion County sentence was imposed. But DOC contends that relator's confinement during that 82-day period was the result of pretrial detention in Clackamas County and the probation violation warrant from Marion County, not a "sentence" for a crime or a "sentence" for conduct. Thus, in DOC's view, because relator's confinement during that 82-day period was not the result of a "sentence" at all, it was not covered by ORS 137.370(4).[7] We disagree.

DOC reasons that a "sentence"—either for a "crime" or for "conduct"—is required by a grammatical reading of the text of subsection (4). Although that is one plausible reading, that reading is not required by the text or grammar. The relevant part of ORS 137.370(4) could be broken into two equivalent clauses that describe how "a person *** is confined." A person could be confined either as the result of "a sentence for a crime" or the person could be confined as the result of the person's "conduct." Both clauses

_____

[7] DOC notes that ORS 137.370(4) also would authorize a court to order presentence incarceration credit for time that a person is confined in a local jail as a sanction for violating the conditions of probation, parole, or post-prison supervision. We agree with DOC that that provision does not apply here because relator was confined in jail until April 2020 *before* the allegations that he had violated the conditions of his Marion County probations had been resolved, not as a sanction for violating those conditions.

are qualified by the remaining part of the sentence, that is, the crime or the conduct must not be "directly related to the crime for which the sentence is imposed." That construction would cover relator's situation because he was confined in the Clackamas County Jail during that 82-day period in part because of "conduct" that led to charges in Clackamas County and that was unrelated to the alleged violation of his Marion County probations.

DOC contends that its interpretation of ORS 137.370(4) is supported by our analysis of a related statute, ORS 137.320, in *Nissel v. Pearce*, 307 Or 102, 764 P2d 224 (1988).[8] Specifically, DOC contends that *Nissel* (1) stated a general rule that DOC or the county sheriff, but not a sentencing court, has sole responsibility for computing and granting credit for time served, *id*.at 105; and (2) concluded that the legislature did not intend to allow a person to receive "double credit" for presentence incarceration against multiple sentences in a string of consecutive sentences, *id*. at 110. It is true that, in *Nissel*, this court observed that, in general, it is DOC's responsibility to compute the length of a sentence, and that the statute did not allow DOC to give "double credit" for multiple consecutive sentences. But that observation does not support DOC's interpretation of subsection (4) of ORS 137.370 because that provision did not exist in 1988, when we decided *Nissel*.

Part of subsection (4) was first added to ORS 137.370 in 1995. Or Laws 1995, ch 657, § 20.[9] In 2015, the legisla-

---

[8] Statutory context may also include "case law interpreting the statute at issue and related statutes, including earlier versions of those statutes." *SAIF v. Walker*, 330 Or 102, 109, 996 P2d 979 (2000). ORS 137.320 has been amended on two occasions following our decision in *Nissel*. Or Laws 1995, ch 423, § 29; Or Laws 2014, ch 31, § 2. Because those amendments do not affect our analysis, we refer to the current version of the statute in this opinion.

[9] Context also includes the text of the statute before it was amended. *See State v. Turnidge (S059155)*, 359 Or 364, 386, 374 P3d 853 (2016) (explaining that a court examines prior versions of a statute as part of statutory context). The 1995 legislature added the following provision:

"A person who is confined as the result of a sentence for a crime or conduct that is not directly related to the crime for which the sentence is imposed, or for violation of the conditions of probation, parole or post-prison supervision, shall not receive presentence incarceration credit for the time served in jail towards service of the term of confinement."

Or Laws 1995, ch 657, § 20.

ture amended that addition to give the court discretion to order presentence incarceration credit that would otherwise be denied by that subsection. Or Laws 2015, ch 508, § 4.[10] The statute discussed in *Nissel*—ORS 137.320—requires the computation of a sentence "in accordance with the provisions of ORS 137.370." ORS 137.320(3). Thus, after the 2015 amendment to ORS 137.370(4), DOC's computation became subject to a sentencing court's exercise of discretion to "order otherwise." *Nissel*'s discussion of DOC's sole responsibility to compute the sentence came *before* the legislature gave courts a role in that computation. Similarly, *Nissel*'s discussion of the prohibition against "double credit" came before the legislature gave courts the discretionary authority to order what could be, in effect, "double credit" in some limited circumstances.

In addition, *Nissel*'s interpretation of ORS 137.320 to generally preclude giving a person "double credit" against multiple *consecutive* sentences does not apply here, because relator was not sentenced to multiple consecutive prison sentences. The 60-month sentences in the Marion County cases ran concurrently to each other and to the 13-month prison sentence that had been previously imposed in the Clackamas County case. *See* ORS 137.123(1) (requiring sentences to run concurrently "unless the judgment expressly provides for consecutive sentences").

Although giving relator presentence incarceration credit towards his Marion County sentences in this case would, as a legal matter, give him "double credit" for that time, doing so was, as a practical matter, the only way to give him *any credit at all* because the sentences imposed by the two courts would run concurrently. DOC gave relator 82 days' presentence incarceration credit towards the 13-month sentence imposed by the Clackamas County court, and the 43 days that he was held after sentencing in Clackamas County would count towards that sentence, but he would finish serving that sentence long before he finished serving the concurrent 60-month sentences imposed by the Marion County court. Thus, giving relator presentence incarceration credit

---

[10] The 2015 amendment added the words "[u]nless the court expressly orders otherwise" to the beginning of ORS 137.370(4). Or Laws 2015, ch 508, § 4.

only towards the Clackamas County sentence would be meaningless in determining how much time he served in prison.

In summary, the text and context of ORS 137.370(4) support the conclusion that, after the 2015 amendment to the statute, courts had authority to grant what would otherwise be considered "double credit" under the circumstances presented here. As we will explain next, the legislative history confirms that understanding.

2. *Legislative history*

As noted above, subsection (4) was first added to ORS 137.370 in 1995, when the legislature enacted House Bill (HB) 2492 (1995). Or Laws 1995, ch 657, § 20. Although it was not until 2015 that the legislature gave courts the authority to order presentence incarceration credit that would not have been granted by DOC, the legislative history of the 1995 amendment is still relevant because, as noted above, DOC contends that subsection (4) applies only if a defendant is held in custody based on a "sentence for *** conduct" and not for time that a defendant is held for "conduct" in the absence of a "sentence" for that conduct. But the legislative history of HB 2492 (1995) reveals that the word "sentence" was added to subsection (4) to modify only the word "crime." It was not added to require a sentence for contempt or for any other "conduct" for which a person might be held in custody but that did not constitute a crime.

In 1995, as today, subsection (2) of ORS 137.370 would not give anyone presentence incarceration credit for time in custody on an unrelated crime.[11] Nevertheless, the Oregon District Attorneys Association (ODAA) proposed adding subsection (4) to ORS 137.370 in 1995 to avoid confusion for the DOC personnel who were responsible for addressing various court orders and judgments in computing the length of prison sentences and determining release dates. Tape Recording, Senate Committee on Judiciary, HB 2492, May 18, 1995, Tape 173, Side B (testimony of Fred Avera, ODAA). The bill as originally introduced did

---

[11] At that time, subsection (2) provided that the sentence served "includes only" the time that the person is confined by any authority after arrest for the crime for which sentence is imposed, and time outside a confinement facility as authorized by a DOC program. ORS 137.370(2)(a), (b) (1995).

not include a "sentence" requirement at all. *See* Exhibit I, Senate Committee on Judiciary, HB 2492, May 18, 1995 (original proposed language for subsection (4)).

The "sentence" requirement was added when the original bill was amended at the request of the Oregon Criminal Defense Lawyers Association (OCDLA). Jim Arneson of OCDLA testified that HB 2492, as originally drafted, failed to adequately address what would happen when a person was charged with two crimes during a single criminal episode and subsequently held in jail on both charges. Tape Recording, Senate Committee on Judiciary, HB 2492, May 18, 1995, Tape 175, Side A (testimony of Jim Arneson, OCDLA). He explained that an individual in that situation should receive credit for presentence time served against *both* resulting convictions and should be denied credit only if the individual was sentenced separately on unrelated crimes. To ensure that outcome, Arneson suggested that the legislature "add 'of a sentence' after 'as a result' * * * so that it's clear that you need to be serving the sentence" for one crime to be denied presentence credit against a subsequent sentence for an unrelated crime. *Id*. The legislature agreed and amended the bill to insert the phrase "of a sentence" to ensure that individuals would receive credit for presentence time served against sentences that had been imposed for crimes that were part of a single criminal episode, but not for unrelated crimes. The legislature did not make a similar amendment to qualify the word "conduct," and there is no suggestion in the legislative history that "sentence" was added to ensure that a sentence was required for contempt or other conduct to come within the ambit of ORS 137.370(4).

Applying "sentence" only to "crime" and not to "conduct" finds further support in a proposed amendment that was drafted by legislative staff. *See Doyle v. City of Medford*, 347 Or 564, 576-79, 227 P3d 683 (2010) (explaining that legislative history includes a bill's progression through the legislative process). That proposal would have structured ORS 137.370(4) as follows:

"(4)  A person shall not receive presentence incarceration credit for the time served in jail towards service of the

term of confinement if the person is otherwise confined as the result of:

"(a)   A sentence for a crime;

"(b)   Conduct that is not directly related to the crime for which the sentence is imposed; or

"(c)   A violation of the conditions of probation, parole or post-prison supervision."

Exhibit A, Senate Committee on Judiciary, HB 2492, May 30, 1995.

That proposed amendment made it clear that "sentence" applied only to crimes, not conduct. Although the legislature ultimately enacted ORS 137.370(4) as a single subsection instead of breaking it into paragraphs as staff had proposed, there is no evidence that it did so to *reject* the staff proposal, and the previous iteration of the provision suggests that the legislature did not intend for "sentence" to apply to "conduct," as noted above. Thus, the legislature likely intended subsection (4) of ORS 137.370 to apply to those confined due to "[a] sentence for a crime" as well as those confined due to "conduct." That supports our preliminary conclusion, based solely on the text and context, that the legislature intended subsection (4) to cover confinement based on "conduct" as well as confinement based on a "sentence for a crime."

Of course, under the 1995 statute, courts did not have any authority to override DOC's computation of presentence incarceration credit. As noted above, that changed in 2015, when the legislature added the discretionary clause that now appears in ORS 137.370(4). Or Laws 2015, ch 508, § 4.[12] The legislative history of the 2015 amendment supports the conclusion that the legislature intended to give courts the authority to override DOC's determination that would deny presentence incarceration credit, that is, to give courts the authority to "order otherwise" under circumstances analogous to relator's situation.

---

[12] The 2015 legislation also included a temporary version of ORS 137.370(4) that required the prosecuting attorney to agree to the granting of credit. Or Laws 2015, ch 508, § 1. That version was in effect only until July 1, 2017, at which point the current version became operative. *Id.* § 5.

Brad Berry of the ODAA explained that the amending bill, HB 2310, dealt with "truth in sentencing," such that parties could leave a sentencing hearing with a clear idea of what would follow. Video Recording, House Committee on Judiciary, HB 2310, Apr 20, 2015, at 0:55:26 (testimony of Brad Berry, ODAA), https://olis.oregonlegislature.gov (accessed July 2, 2025). As relevant here, a staff measure summary stated that the amendment "addresse[d] the situation where a defendant is held in custody both on a probation violation and a new criminal case," and that "[t]he bill makes clear that a judge has the discretion to give a defendant credit on the new criminal matter for time served as part of a probation violation[.]" Staff Measure Summary, House Committee on Judiciary, HB 2310, Apr 21, 2015. There is no indication that the legislature intended to prohibit the converse—that is, a judge giving a defendant credit on a probation violation for time served as part of the new criminal matter.

Testimony from legislative counsel reiterated what had been provided in the staff measure summary. In describing the effect of HB 2310, Jessica Minifie from the Office of Legislative Counsel provided the example of a person who was "in custody on two matters simultaneously"—a pending probation violation and a new crime—and received a sentence on the probation violation first. Video Recording, Senate Committee on Judiciary, HB 2310, May 20, 2015, at 1:19:46 (testimony of Jessica Minifie, Legislative Counsel), https://olis.oregonlegislature.gov (accessed July 2, 2025). Minifie explained that, under the then-existing statute, that person would "not get any credit * * * on the new crime, even though [the person is] in custody on that crime" and despite "serving a sentence on a probation matter." *Id*. She provided another example of a person "serving a sentence in the Department of Corrections" and who is then "brought to a county on a new crime." *Id*. at 1:20:48. In that scenario, Minifie indicated that the person would get no pretrial credit against a sentence for the new crime because they would already be "serving a sentence on another matter." *Id*.

The 2015 amendment was intended to correct that situation, and nothing in the legislative history indicates that the amendment was intended to preclude courts from

ordering that a person would receive presentence incarceration credit towards imprisonment upon revocation of an unrelated probation for the time that they were held in custody before sentencing on another matter.

Applying the legislative history to our interpretation of ORS 137.370(4) also underscores that, in many circumstances, DOC's understanding of the statute would make the word "conduct" in subsection (4) surplusage, contrary to a general principle of statutory interpretation. *See State v. Clemente-Perez*, 357 Or 745, 755, 359 P3d 232 (2015) ("As a general rule, we *** assume that the legislature did not intend any portion of its enactments to be meaningless surplusage.").

To avoid surplusage, the word "conduct" must be given a distinct meaning from the word "crime." We evaluate those words by reference to each other. *See Goodwin v. Kingsmen Plastering, Inc.*, 359 Or 694, 702, 375 P3d 463 (2016) ("It is a familiar rule that the meaning of words in a statute may be clarified or confirmed by reference to other words in the same sentence or provision."). If confinement because of "a sentence for a crime" means post-conviction incarceration, then confinement for "conduct" likely refers to preconviction incarceration, thereby giving a distinct meaning to each term.

The surplusage principle, stated another way, counsels courts, generally, "to avoid a statutory construction that creates redundancy in the way that the statute is read." *SAIF Corp. v. Ward*, 369 Or 384, 398, 506 P3d 386 (2022). Reading ORS 137.370(4) to apply to persons who are "confined as the result of a sentence for a crime" as well as those who are "confined as the result of *** conduct" gives meaning to each part of the statute without any surplusage. Conversely, applying the term "sentence" to both "crime" and "conduct" creates a redundancy in most circumstances. That redundancy becomes apparent when considering a common situation in which an individual receives a "sentence" for "conduct" that is not necessarily a "crime"—when the person's conduct leads to the revocation of their probation, parole, or post-prison supervision.[13] But persons who

---

[13] In *State v. Lane*, 357 Or 619, 621, 629, 355 P3d 914 (2015), we noted that many statutes and rules "refer to the imposition of a sanction for probation violations as 'sentencing'" and concluded that imposing terms of incarceration "as a

are confined for violating the conditions of probation, parole, or post-prison supervision are already covered by the next clause in ORS 137.370(4), which expressly applies to persons confined "for violation of the conditions of probation, parole or post-prison supervision." Thus, if DOC is correct that "a person confined for * * * conduct" only applies if the person is confined because of a *sentence* for conduct, the term "conduct" would be redundant in most circumstances.

DOC contends that surplusage and redundancy are avoided because a person could be "sentenced for conduct" that is not a crime when they are held in contempt for violating a court order. It is true that a person can be sentenced for contempt based on the person's conduct even if that conduct does not amount to a crime, but, as discussed above, there is no evidence in the legislative history that the legislature included "conduct" in ORS 137.370(4) to ensure that a sentence for contempt would be covered. If that is what the legislature intended, it would have used the term "contempt" instead of "conduct." Moreover, contempt is not the *only* reason—or even the most common reason—that a person can be held in confinement for "conduct." For example, in addition to presentence incarceration, a person could also be confined for "conduct" that does not result in a "sentence" if the person is sanctioned for violating the conditions of probation, parole, or post-prison supervision, or if they are confined awaiting resolution of allegations that they have violated the conditions of probation, parole, or post-prison supervision. Thus, in most circumstances in which a person could be held in custody for "conduct," reading the statute to require a "sentence" for that conduct would be surplusage.

In summary, the text, context, and legislative history of ORS 137.370(4) all support the trial court's conclusion that relator was entitled to credit against his Marion County sentences for the 82-day period that he was held in custody before he was sentenced in the Clackamas County

---

sanction upon probation revocation amounts to 'sentenc[ing]'" within the meaning of Article I, section 44(1)(b) of the Oregon Constitution. (Brackets in *Lane*.); *see also* ORS 137.545(5)(b) (providing that the court that initially imposed probation on a defendant "may revoke probation supervision and impose a sanction as provided by rules of the Oregon Criminal Justice Commission."); ORS 138.005(5) (b) (defining "sentence" to include "imposition or execution of a sentence upon revocation of probation").

case because the Marion County court expressly ordered that he was entitled to that credit, and the statute gave the court the authority to do so in this situation.[14] We turn to the 43-day period that relator was held in custody *after* he was sentenced in the Clackamas County case but *before* his Marion County probations were revoked.

C.    *The Second Period (43 Days)*

    1.    *Text and context of ORS 137.370(4)*

DOC contends that ORS 137.370(4) does not apply to the 43-day period after relator was sentenced in Clackamas County but before he was sentenced to prison upon revocation of his Marion County probations because, although relator was serving a "sentence" for an unrelated crime, ORS 137.370(4) only applies to presentence incarceration credit "for the time served in jail." DOC contends that relator was not serving presentence time "in jail" during the last 43 days of confinement because—although he was physically in a "jail" during that period—he was serving a prison sentence in DOC's legal custody. That is true, but it does not mean that relator was not entitled to presentence incarceration credit against his Marion County sentence for that time.

As a factual matter, relator was physically confined "in jail"—not in a DOC prison—during that entire 43-day period. As noted above, relator was transported from the Clackamas County Jail to the Marion County Jail immediately after sentencing in Clackamas County. Although relator's confinement during that 43-day period was post-sentencing in the Clackamas County case, it was presentencing on the probation violation matters in the Marion County cases. As a textual and factual matter, that supports the

---

[14] DOC also contends that two administrative rules, OAR 291-100-0080(3) (g) (Jan 16, 2019) and OAR 291-100-0080(3)(e) (Jan 16, 2019), preclude the credit that the trial court granted to relator. The Court of Appeals cited those rules in reversing the trial court. *Torres-Lopez*, 333 Or App at 175-76. To the extent that DOC's administrative rules conflict with ORS 137.370(4), the statute controls. *See Fisher Broadcasting, Inc. v. Dept. of Rev.*, 321 Or 341, 355, 898 P2d 1333 (1995) (explaining that a legislative choice under a statute is not subject to being overruled by department regulation); *U. of O. Co-Oper. v. Dept. of Rev.*, 273 Or 539, 550, 542 P2d 900 (1975) ("[A]n administrative agency may not, by its rules, amend, alter, enlarge or limit the terms of a legislative enactment."). Consequently, DOC's administrative rules do not cabin the discretion that the legislature granted to trial courts in ORS 137.370(4).

conclusion that the Marion County court had the authority under ORS 137.370(4) to order "presentence incarceration credit" towards his Marion County sentence for that 43-day period, contrary to DOC's contention.

As a contextual and legal matter, DOC's contention is refuted by the distinction between *physical* custody and *legal* custody that is reflected in ORS 137.320 and subsections (1) and (2) of ORS 137.370. In most cases, upon entry of a judgment sentencing a defendant to prison, the physical and legal custody of the defendant are simultaneously transferred to DOC. *See* ORS 137.320(1) (requiring the county sheriff to deliver a defendant to DOC after entry of a judgment that commits a defendant "to the legal and physical custody" of DOC). However, the statute recognizes that, in some circumstances, the physical custody of a defendant can be transferred to another county jail to resolve charges pending in that county even though DOC—along with the county sheriff—will have legal custody of the defendant. *See* ORS 137.320(2) (describing process where a defendant "is surrendered to another legal authority prior to delivery" to a DOC prison); *see also State v. DeCamp*, 158 Or App 238, 244 n 4, 973 P2d 922 (1999) (explaining that, under ORS 137.320(1) and (2), a person committed to DOC's custody might be "first delivered to another legal authority" to serve a jail sentence or resolve other charges in another county).

The fact that relator was in the legal custody of DOC on the Clackamas County prison sentence did not change the fact that he was in the physical custody of the Marion County Sheriff in the Marion County Jail, and simultaneously, in the legal custody of the Marion County Sheriff under the probation violation warrant until the probation violation matter was resolved. Although he was also in the legal custody of DOC, serving his Clackamas County sentence, during that 43-day period, that does not mean that relator was not in "jail" during that time for purposes of his Marion County cases. He was. He was in the physical custody of the Marion County Sheriff awaiting resolution of the probation violation matter. He was simultaneously in the legal custody of both DOC and the Marion County Sheriff during that time. And the Marion County court expressly

ordered that that jail time "counts" towards his Marion County sentence.

In summary, the text of ORS 137.370(4), read in context, supports the trial court's conclusion that the Marion County sentencing court had the authority to give relator credit for the 43-day period that he was held in the Marion County Jail awaiting resolution of the probation violation matter. The legislative history confirms that intent.

2.  *Legislative history*

As noted above, subsection (4) was added to ORS 137.370 in 1995, via HB 2492 (1995). Or Laws 1995, ch 657, § 20. There is evidence in the legislative history of that bill that subsection (4) was intended to cover situations analogous to the 43-day period that relator was held in custody after sentencing in the Clackamas County case. Fred Avera of ODAA stated that the bill would apply when "a person is in prison doing a sentence" and "they get charged with a new crime," such that they would "not get[] credit for the time that they're in prison" against the new crime. Tape Recording, Senate Committee on Judiciary, HB 2492, May 18, 1995, Tape 173, Side B (testimony of Fred Avera, ODAA).

In other words, they would not receive "double credit for something they're already sentenced on and one they're pending on." *Id.* In a subsequent hearing, Avera clarified that the amendment would cover "a person who is doing state time when he gets charged with and then is sentenced on a new crime." Tape Recording, Senate Committee on Judiciary, HB 2492, May 18, 1995, Tape 175, Side A (testimony of Fred Avera, ODAA). Similarly, committee counsel explained that, with the amendment, someone serving time for a probation violation while also waiting for trial on an unrelated criminal matter would not receive credit against the sentence imposed for that other matter. Tape Recording, Senate Committee on Judiciary, HB 2492, May 18, 1995, Tape 182, Side A (statement of Bill Taylor, Committee Counsel).

Those explanations are analogous to relator's situation during the 43-day period from March to April 2020. During that time, relator was already "sentenced on" the

Clackamas County convictions, and he was "pending on" the probation violations in Marion County. Likewise, he was "doing state time" for the Clackamas County convictions when he was "sentenced on" his probation violations in Marion County. Therefore, the legislature had circumstances comparable to relator's confinement from March to April 2020 in mind when it added subsection (4) to ORS 137.370 in 1995. Under that version of the statute, a person in relator's situation would be covered by ORS 137.370(4) but would not receive double credit for that time. Then the 2015 amendment gave the court the authority to order what would, in effect, be double credit that a person in relator's situation would not otherwise have received under the original version of the statute.

In summary, the text, context, and legislative history of ORS 137.370(4) all support the trial court's conclusion that relator is entitled to presentence incarceration credit for the 43-day period that he was held in custody after sentencing in the Clackamas County case but before sentencing in the Marion County case, as the Marion County court had expressly ordered.

## III.   CONCLUSION

We conclude from the text, context, and legislative history of ORS 137.370(4) that the Marion County sentencing court had the statutory authority to do what everyone agrees it intended to do: grant relator presentence incarceration credit towards the concurrent 60-month prison sentences that the court imposed upon revoking his probation for the time that he was confined in jail from December 21, 2019 to April 24, 2020.[15] Accordingly, DOC was legally required to grant that credit, and the trial court correctly granted mandamus relief to compel DOC to comply with the sentencing court's order.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

---

[15] Counsel for DOC acknowledged at oral argument that the sentencing court could have achieved the intended result by subtracting the 125-day period—roughly four months—from the concurrent 60-month prison sentences it imposed after revoking relator's probations. Our interpretation of ORS 137.370(4) thus means that the court could achieve the same outcome by granting presentence incarceration credit for that 125-day period when it imposed the 60-month prison sentences.