No. 45 November 14, 2025 423

# IN THE SUPREME COURT OF THE STATE OF OREGON

STATE ex rel Abraham TORRES-LOPEZ,
*Petitioner on Review,*

*v.*

Kat FAHRION,
Administrator for Offender Information
and Sentence Computation Unit of the
Oregon Department of Corrections,
*Respondent on Review.*

(CC 22CV16960) (CA A180541) (SC S071194)

On respondent on review's petition for reconsideration filed on July 24, 2025; considered and under advisement on September 9, 2025.*

Timothy A. Sylwester, Assistant Attorney General, Salem, filed the petition for reconsideration on behalf of respondent on review. Also on the petition were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Jedediah Peterson, Equal Justice Law, Portland, filed a response for petitioner on review.

BUSHONG, J.

The petition for reconsideration is allowed. The former opinion is modified and adhered to as modified.

---

\* 373 Or 816, 572 P3d 1045 (2025); on review from the Court of Appeals, 333 Or App 172, 552 P3d 135 (2024).

**BUSHONG, J.**

Respondent filed a petition for reconsideration of our decision in *State ex rel Torres-Lopez v. Fahrion*, 373 Or 816, 572 P3d 1045 (2025), where we held that a trial court may grant presentence incarceration credit under ORS 137.370(4) for the 125 days that relator spent in custody after his arrest on outstanding warrants and before the Marion County Circuit Court revoked his probations and sentenced him to serve 60 months in prison.[1] Respondent contends that the opinion contains a factual error that affects the outcome of this case, at least in part. We acknowledge that our opinion contains a factual error, but as explained below, we conclude that correcting the error does not change the outcome of this case. Accordingly, we allow reconsideration, modify our opinion to correct the factual error, and adhere to our opinion as modified.

The factual error concerns the second period in custody that is at issue in this case, specifically, the 43 days that relator was held in custody after he was sentenced on March 11, 2020, in his Clackamas County case but before he was sentenced on April 24, 2020, upon revocation of his Marion County probations. We addressed that 43-day period in our original opinion, *Torres-Lopez*, 373 Or at 834-37, concluding that ORS 137.370(4) authorized the Marion County court to grant relator credit for that 43-day period against the prison

---

[1] As we explained in our original opinion, subsection (4) of ORS 137.370 "governs sentences imposed for crimes that were not 'directly related' to the crime for which a sentence is imposed or for probation, parole, or post-prison supervision violations." *Torres-Lopez*, 373 Or at 824. A person sentenced under subsection (4) "shall not receive presentence incarceration credit" for time served in jail "[u]nless the court expressly orders otherwise." ORS 137.370(4). In our original opinion, we did not address how a court would indicate that it intended to "expressly order otherwise" because that issue was not presented in this case. All parties agreed that, upon revoking relator's probations, the Marion County Circuit Court had expressly ordered that relator was entitled to "'credit for time served since December 21, 2019[,] including time credited to'" the Clackamas County Circuit Court case. *Torres-Lopez*, 373 Or at 820 (quoting probation revocation judgments entered by the Marion County court (brackets in *Torres-Lopez*)). Thus, it was undisputed in this case that the court *had* "expressly ordered otherwise" within the meaning of ORS 137.370(4). Because there was no dispute that the Marion County court had expressly ordered that relator would in effect receive "double credit" for that 125-day period under ORS 137.370(4), we did not interpret that provision of the statute or decide what a judgment must say in other contexts covered by subsection (4) to reflect that the court had "expressly order[ed]" double credit within the meaning of that provision.

sentence that the court imposed after revoking his probations. That determination was premised in part on the statement that relator was physically confined in the Marion County Jail during that period. *See id.* at 819-20 (stating that, after relator was sentenced in Clackamas County Circuit Court, he was transported to the Marion County Jail to address the pending probation violation matter); *id.* at 834 (stating that relator was physically transported from the Clackamas County Jail to the Marion County Jail, where he was held during that 43-day period); *id.* at 835, 836 (same).

That statement, as a factual matter, was incorrect. Relator was not physically confined in the Marion County Jail during that period. According to the court files in the underlying probation cases, the Marion County Circuit Court had *ordered* the Clackamas County Jail to transport relator to the Marion County Jail to address the pending probation violation instead of immediately transporting him to prison. As explained in our original opinion, that transport order was authorized by Oregon law, *id.* at 835 (citing ORS 137.320(2) and *State v. DeCamp*, 158 Or App 238, 244 n 4, 973 P2d 922 (1999)). But the transport that had been ordered by the Marion County Circuit Court is not what occurred as a factual matter.

Instead, after relator pleaded guilty in the Clackamas County case on March 11, 2020, he was transported to Department of Corrections (DOC) custody. The events leading to that transport reveal that, although relator was transported to the physical custody of DOC, he was still subject to the legal custody of the Marion County Jail.

Relator was arrested on December 21, 2019, on the warrants that had been issued by the circuit courts in Marion County and Clackamas County.[2] After his arrest,

---

[2] As we explained in our original opinion, the Marion County warrants were based on allegations that relator had violated the conditions of his probations; the Clackamas County warrant was based on relator's indictment on new charges. Relator later entered guilty pleas in Clackamas County Circuit Court on the new charges, and he admitted that he had violated his Marion County probations. The Marion County Circuit Court revoked his probations and sentenced relator to serve 60-month prison sentences, with the sentences to run concurrent to each other and concurrent to the 13-month prison sentence that the Clackamas County Circuit Court had imposed. *See Torres-Lopez*, 373 Or at 819-20 (summarizing those historical facts).

the probation violation warrants that had been issued by the Marion County Circuit Court continued to legally detain him—along with the warrant that had been issued by the Clackamas County Circuit Court—until relator was sentenced by the Clackamas County court. Thereafter, relator was legally detained under the authority of the Clackamas County judgment, but the detainer resulting from his arrest on the Marion County probation violation warrants continued until the probation violation allegations were resolved. *See* ORS 137.545 (probation violation warrant authorizes the arrest and detention of a probationer until the allegations are resolved).[3] According to the trial court record in relator's underlying probation cases, on March 9—two days before relator entered his guilty pleas in Clackamas County Circuit Court—consistent with the continued Marion County hold, relator filed motions in the pending Marion County cases to have him transported to Marion County to resolve the probation violation matters after he entered his guilty pleas in Clackamas County. The state did not oppose those motions.

On March 10—the day before relator entered his guilty pleas in Clackamas County—the Marion County Circuit Court granted those unopposed motions and ordered that relator "shall be transported from the Clackamas County Jail to the Marion County Jail following his change of plea and sentencing on [the] Clackamas County Circuit Court case." That transport did not happen. Instead, after relator entered his guilty pleas and was sentenced in the Clackamas County case, he was transported to the Coffee Creek Correctional Institution (CCCI) in DOC custody for intake into the prison system.

On March 17, the district attorney in Marion County then filed unopposed motions in the pending probation

---

[3] The return of service on the probation violation warrants issued by the Marion County Circuit Court indicated that relator had been arrested in Clackamas County on December 21, 2019, and was arraigned on the warrants by video on April 6, 2020. The probation violation allegations were resolved on April 24, 2020, when relator admitted that he had violated the conditions of his probations, and the court revoked his probations. As noted above, upon revoking his probations, the court sentenced relator to serve 60-month prison sentences, with the sentences to run concurrent with each other and concurrent to the 13-month sentence that had been imposed by the Clackamas County Circuit Court.

violation cases directing DOC to transport relator to the Marion County Jail to resolve the probation violation matters. The motions stated that, after transport, relator "shall remain in the custody of the Sheriff of Marion County" during the pendency of the probation violation proceedings. The court granted the motions that same day, signing an order requiring relator to be transported to the court for an appearance on April 3 and any subsequent proceedings until the probation violation matters were resolved.

That transport did not happen, either. Instead, relator appeared in court on April 3 for arraignment on the probation violation warrants by video from CCCI. He was finally transported to the Marion County Jail in time for his April 24 hearing. At that hearing, relator admitted that he had violated the conditions of his probations, the court revoked his probations and sentenced him to prison, and the court ordered that relator be given credit against that prison sentence for the time that he was held in custody on the Marion County matters, beginning from the time he was arrested on the Marion County probation warrants on December 21, 2019, until he was sentenced on April 24, 2020.

In summary, the Marion County court had ordered, pursuant to ORS 137.320(2), that relator would be transported from the Clackamas County Jail to the Marion County Jail to address the probation violation matters, and to remain in the custody of the Marion County Jail until those matters were resolved.[4] The state did not object to that transport and actively sought to ensure that relator was transported to the Marion County Jail. But as a factual matter, relator was not transported to the Marion County Jail. Instead, he was transported to CCCI and remained in the physical custody of DOC during the 43-day period after he was sentenced in Clackamas County on March 11 until

_____

[4] ORS 137.320(1) generally requires a county sheriff to deliver a defendant to DOC after entry of a judgment that commits a defendant "to the legal and physical custody" of DOC, but ORS 137.320(2) describes the process where a defendant "is surrendered to another legal authority prior to delivery" to a DOC prison. Here, the Clackamas County judgment committed relator to the legal and physical custody of DOC, but relator was simultaneously in the legal custody of Marion County Jail because of the pending probation violation warrants.

his probation was revoked and he was sentenced in Marion County on April 24.

That factual correction does not change the outcome of this case. The parties agree that the Marion County Circuit Court expressly ordered that relator be given credit for that 43-day period against the prison sentence that the court imposed. That order did not depend on relator being held in the *physical* custody of the Marion County Jail during that period, and relator was in the *legal* custody of the Marion County Jail because of the continuing hold after his arrest on the probation violation warrants. *See id.* at 835 (explaining that relator was in the legal custody of the Marion County Jail under the detainer following his arrest on the probation violation warrants).

Respondent contends that the fact that relator was not physically in the Marion County Jail during that 43-day period means that he was not "in jail" for purposes of ORS 137.370(4), and thus, the court lacked authority to order that relator be given credit for that time in custody. We disagree. The lack of physical custody is not dispositive. Although relator was not in the physical custody of the Marion County Jail during that 43-day period, he was nevertheless in the *legal* custody of the Marion County Jail. As a result, the question is whether that legal custody is sufficient to establish "time served in jail" for purposes of ORS 137.370(4). If so, then the Marion County Circuit Court had authority under the "unless" clause of subsection (4) of that statute to order that relator be given credit for that time.[5]

To determine whether that legal custody is sufficient to treat the 43-day period as "time served in jail" for purposes of ORS 137.370(4), we employ our prescribed method of statutory interpretation. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (when interpreting a statute, we look first to the statute's text and context, and then any helpful legislative history). Based on the text, context, and legislative history of ORS 137.370(4), we conclude

---

[5] As noted above, ORS 137.370(4) provides that, "[u]nless the court expressly orders otherwise," a person in relator's position who is confined in custody because of a sentence for an unrelated crime "shall not receive presentence incarceration credit for the time served in jail."

that the phrase "time served in jail" refers to time when a person is in the legal custody of a jail for the crime for which the person's sentence is being calculated.[6]

Although the phrase "time served in jail" is not entirely clear, the text of the statute shows that it is intended to create a default rule that bars credit for presentence incarceration to prevent giving a defendant "double credit." Given the apparent intent behind the default rule, the legislature likely intended to bar double credit for all time that a person was being held in custody for the crime for which the sentence is being calculated, regardless of whether the person was physically in a jail, as opposed to a prison, during that period, unless a court ordered otherwise.

Context supports that view. In other related statutes, the legislature used the term "county jail" (ORS 137.330), or "jail of the proper county" (ORS 137.167) to describe custody that is specifically in the physical custody of a county jail. But the legislature used "jail" more generally in ORS 137.370(4) without specifying that the jail must be the "county" jail. That suggests that a person is "in jail" in that context if the person is in the legal custody of a jail regardless of the place of physical confinement.

In addition, under ORS 169.053, counties can enter into agreements with DOC "for the confinement and detention of offenders subject to the legal and physical custody of the county," including "pretrial detainees." ORS 169.053(1) (a). Thus, a person can be in the legal custody of a county, while also in the physical and legal custody of DOC. Given that a person can be in pretrial physical custody either in a jail or in a DOC facility, it seems unlikely that the legislature intended ORS 137.370(4)'s applicability to depend only on the person's physical custody. That would mean that whether a person is generally barred from double credit under ORS 137.370(4), and whether a sentencing court

---

[6] That does not mean that a person who is serving a prison sentence in DOC custody after the person was arrested on a probation violation warrant but before the probation violation matter is resolved will *always* receive credit for the time spent in the physical custody of DOC. As explained in our original opinion, a defendant in that situation would not receive credit for that time unless the sentencing court expressly ordered pursuant to ORS 137.370(4) that the defendant be given that credit, as happened in this case. *See Torres-Lopez*, 373 Or at 823-24.

could override that default rule, would depend entirely on the happenstance of whether the court was in a county that had entered into an agreement with DOC to hold pretrial detainees.

The legislative history of ORS 137.370(4) supports the view that the legislature intended ORS 137.370(4) to establish a default rule that denies credit for presentence incarceration time *without regard* to whether the person is physically in jail or prison. As explained in our original opinion, ORS 137.370(4) was originally enacted in 1995 and was intended to bar credit for presentence incarceration time that overlapped with certain other types of time, including sentences for unrelated crimes. *Torres-Lopez*, 373 Or at 836. The provision's legislative history indicates that the legislature intended the provision to bar double credit for overlapping time, regardless of where a person was physically located. Fred Avera, a proponent of the bill that created the provision, told the legislature that the bill would apply when "a person is in prison doing a sentence" and "they get charged with a new crime" such that the person would "not get[] credit [toward the new crime's sentence] for the time that they're *in prison*." *Id* (citing Tape Recording, Senate Committee on Judiciary, HB 2492, May 18, 1995, Tape 173, Side B, (testimony of Fred Avera, Oregon District Attorneys Association) (emphasis added)). He also said that the provision was intended to prevent persons from receiving "double credit for something they're already sentenced on and one they're pending on" and that it would cover "a person who is doing state time when he gets charged with and then is sentenced on a new crime." *Id*.

Avera's statements suggest that the legislature intended ORS 137.370(4) to have a broad scope, and that the legislature intended to bar double credit for overlapping time regardless of where the time was physically served. Given that broad scope, we conclude that the type of time that ORS 137.370(4) applies to is *not* limited to time physically spent in a county jail but includes *all* time in which a person is in the legal custody of a jail for the crime for which the sentence is being calculated. Under the statute's default rule, a person is not entitled to credit for that time.

But, under the statute's exception, a sentencing court can authorize credit for that time by expressly ordering it, as the Marion County court did here.[7]

We conclude that the fact that relator was in the physical custody of DOC and the legal custody of both DOC and the Marion County Jail during the 43-day period in question meant that he was still "in jail" within the meaning of ORS 137.370(4). Thus, the court had the authority under ORS 137.370(4) to order that relator be given credit for that 43-day period against the prison sentence that the court imposed.

The petition for reconsideration is allowed. The former opinion is modified and adhered to as modified.

---

[7] We explained in our original opinion that, when the legislature amended ORS 137.370(4) in 2015 to adopt an exception to the default rule, that amendment "gave the court the authority to order what would, in effect, be double credit" that would not have been available under the original version of the statute. *Torres-Lopez*, 373 Or at 837.